Attorney General of the United States.

**Pauletta SUTTON, Plaintiff,**

v.

**ADDRESSOGRAPH–MULTIGRAPH CORPORATION, Defendant.**

No. 78–272–C(3).

United States District Court, E. D. Missouri, E. D.

Dec. 11, 1979.

Raymond Howard, Jr., St. Louis, Mo., for plaintiff.

William W. Cody, Clayton, Mo., for defendant.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court for a decision on the merits following a trial to the Court sitting without a jury. Plaintiff brings her suit alleging in her complaint violations of 42 U.S.C. § 2000e *et seq.*

Plaintiff's complaint alleges that she was discriminated against because of her race in defendant's termination of her employment. Defendant claims that plaintiff was fired for insubordination in refusing to perform a properly requested work assignment.

After the trial on the § 2000e count, the record revealed that plaintiff had apparently not complied with the applicable time limits in the filing of her charge with the E.E.O.C. The action was then dismissed and a subsequent hearing was held to determine whether or not the time limits had, been met. At that time plaintiff amended her complaint to bring in a § 1981 claim based on the same occurrence and also demonstrated to the Court's satisfaction that the § 2000e time limits had, been met. The Court then vacated its order of dismissal on plaintiff's motion to set aside, and plaintiff obtained leave to withdraw her amended complaint. The action is now before the Court, therefore, on plaintiff's original complaint brought pursuant to 42 U.S.C. § 2000e *et seq.*

The Court having considered the pleadings, the testimony of the witnesses, documents in evidence, and the record as a whole, and otherwise being fully advised of the premises, hereby makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52. Additionally, the Court regards any findings of fact that are equally applicable as conclusions of law to be conclusions of law.

### FINDINGS OF FACT

1. Plaintiff is a black female citizen of the United States residing in the Eastern District of Missouri.

2. Defendant is a corporation doing business within the Eastern District of Missouri, and is engaged in commerce within the meaning of 42 U.S.C. § 2000e *et seq.*

3. Plaintiff was first employed by defendant on May 7, 1973 as an order-pricing clerk. Plaintiff worked in this capacity until June 15, 1974, at which time she took maternity leave. When plaintiff took leave, defendant hired another person to replace her.

4. On October 10, 1974, plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission because of the defendant's hiring of the replacement to fill her job.

5. This matter was resolved to plaintiff's satisfaction without any court action. Plaintiff was reinstated to a position of billing clerk on October 23, 1974 at the pay rate of $230.00 bi-weekly. Plaintiff also was given retroactive pay at her former rate of pay for the period of September 16, 1974 through October 23, 1974, said period being the time at which plaintiff claims she was able to return to work following her maternity leave.

6. Plaintiff received a pay increase on November 23, 1974, and a further increase on January 19, 1975. On the latter date, plaintiff also received a promotion to the service department where she worked for Don Schneider.

7. On April 18, 1975, plaintiff received a good evaluation from her supervisor, Don Schneider, and one week later on April 25, 1975, she received another pay increase making her bi-weekly salary $275.08.

8. On August 1, 1975, plaintiff was assigned work known as preventive maintenance agreement billing by Schneider. The work involved typing two dates, two dollar amounts, and the contract number on six to eight bills. All of the information was within plaintiff's knowledge. Also, it was necessary to have the work done quickly, because the company was nearing the end of its fiscal year. Myrtle Reynolds, another employee, ordinarily did this work, but she had been promoted to the switchboard and was working there on this particular day.

9. Plaintiff refused to do this work. Schneider explained to her that the bills

were late and overdue and, mindful of the end of the fiscal year, indicated the urgency of the request. Plaintiff still refused the work, saying that she had too much other work to do.

10. Schneider then called plaintiff into his office and explained to her that he needed the work done, although he knew the assignment would interfere with her normal routine. He added that it would not take very much time to do the work. Plaintiff stated that she thought it was not her job and that she did not have the time. Schneider explained to plaintiff that her refusal to perform work requested was a serious matter and that he would have to report it to Joseph Goley, the District Administrative Manager.

11. Schneider called Goley, who told him that he wanted to talk with the Employee Relations Department in Cleveland, Ohio.

12. After lunch, Goley called Schneider and plaintiff into his office. Schneider told Goley of the plaintiff's refusal to perform the assigned work. Plaintiff was then given the opportunity to explain her side of the story. Plaintiff told Goley that she had, in fact, refused to perform the work and that she wanted to see in writing that it was specifically part of her job function and duties.

13. Goley explained to plaintiff that while typing maintenance billing forms was not specifically listed in her job description, it was a task that arose from time to time. Furthermore, as typing was in her job description, and as she was clearly required to "assist employees of higher classifications" when requested, that he thought the request was reasonable and that she should comply.

14. Plaintiff again refused and was told by Goley at that time that her refusal to perform the work assigned was grounds for termination. Goley then asked her to reconsider. Plaintiff again refused, stating that she would not do someone else's job.

15. Goley then suggested that plaintiff return to her desk and take 15 minutes to think it over. Plaintiff stated that it was not necessary to do that because she was not going to do the work and that Goley should just have her unemployment check ready for her on Monday. Goley then informed plaintiff that he had no alternative but to discharge her.

16. Plaintiff's Exhibit 8 is a corrective discipline procedure which recites that it is the policy of the company to avoid unwarranted discharges stating that such could be best accomplished by apprising employees of their performance problems, then giving advance warning regarding a repeat of the infraction, and then taking appropriate action if the infraction was repeated. The policy states that the disciplinary action should start with any of the steps listed in that policy "depending on the seriousness, frequency and circumstances of the offense."

17. Plaintiff claims that this procedure was not followed in her case. She alleges that there had to have been repeated infractions for her to have been terminated, and that she should have been afforded verbal, then written warnings in regard to her conduct prior to any such termination. This Court finds, however, that plaintiff's problem involved an absolute blunt refusal to perform work requested and, under the circumstances, the procedures used by defendant were not inconsistent with those set forth in Exhibit 8. Rather, the Court finds that her insubordination was serious enough to warrant her discharge.

18. Plaintiff also alleges that other employees, particularly Edna Kuhn, Russell Tinnin, Cynthia Green, William K. Landon, Joseph H. Ebeling, and Lillian Parker all refused to do work for their supervisors and were not terminated as a result. Plaintiff alleges further that at one point Edna Kuhn, a white employee, uttered a racial slur while on duty, and was not terminated as a result. The Court finds, however, that in each situation the infraction was of a different, less serious nature than that of plaintiff.

19. Plaintiff was, in fact, discharged from defendant's employ on August 1, 1975. As noted above, she filed timely charges of

racial discrimination in her termination with the Equal Employment Opportunity Commission and filed the instant lawsuit within 90 days of receipt of final determination by the E.E.O.C.

20. Plaintiff also makes charges that she was discriminated against in privileges of employment in that her break time and lunch time were cut short by defendant at various times. The Court finds, however, that the record does not support such allegations.

## CONCLUSIONS OF LAW

 The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e *et seq.* The Court concludes that plaintiff has made a prima facie case that she was discriminated against in her discharge, but defendant has more than amply rebutted her evidence and has established that plaintiff's discharge was for good cause, to wit, insubordination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Furthermore, the civil rights statutes do not protect an employee from disciplinary action, including discharge, for failure to perform legitimate job functions required and requested by supervisors. *Brown v. Ralston Purina,* 557 F.2d 570 (6th Cir. 1977). Additionally, plaintiff has failed to show that defendant's reasons for terminating her were pretextual in nature.

Plaintiff's Exhibit 8 clearly permits discharge for serious infractions without requiring resort to any prior counselling of employees. Insubordination is a serious infraction, and the plaintiff received ample warning of the consequences of her refusal to perform the assigned task and was given a number of opportunities to change her mind. Plaintiff is, however, protected from an unequal application of disciplinary action based on race. Nevertheless, plaintiff failed to show that she was disparately treated. The Court finds that those employees who plaintiff claims were less severely treated than she were not similarly situated, and that their infractions did not include an outright absolute refusal to perform an assigned task. The record shows clearly that Russell Tinnin, Cynthia Green, William Landon, and Joseph Ebeling all had problems with unsatisfactory or substandard performance, as opposed to a blunt refusal to render any performance at all. Lillian Parker was disciplined for problems relating to absenteeism, clearly not a similar infraction to that of the plaintiff.

The incident involving Edna Kuhn's use of offensive language is also not one comparable to the circumstances of plaintiff's insubordination. When Mrs. Kuhn, a white employee, was assigned additional work, she complained of the workload she was already carrying and uttered the repulsive remark. The response of her black co-workers was one of justifiable indignation and the cause of considerable concern regarding its effect upon personnel by the defendant. Mrs. Kuhn was duly reprimanded, warned that a repeated occurrence would result in her termination, and required to apologize to her co-workers, which she did. The filing which Mrs. Kuhn was requested to do was eventually done; the record is not clear as to whether Mrs. Kuhn did it herself, or whether others did it for her, or whether she did it with assistance from co-workers. The Court cannot find, however, that the circumstances surrounding Mrs. Kuhn's comment on her already existing workload was tantamount to plaintiff's insubordination. Of overriding concern to the defendant was the racial slur and any failure to perform assigned work was subsumed into the more important issue of Mrs. Kuhn's remark. The evidence indicates that management was not even aware of any actual failure to perform the filing that was requested of her. As such, the Court cannot conclude that the treatment of Mrs. Kuhn as compared to the treatment of plaintiff shows racial discrimination on the part of defendant.

The Court is mindful that defendant does have a disciplinary policy in effect at its plant, as revealed in Exhibit 8. And, while it is defendant's policy to attempt to reconcile matters regarding work-related problems short of immediate termination, insub-

ordination of the type in the instant case involves conflicts of a different sort. The other workers in question had either not been working properly or had committed a disciplinary infraction that was susceptible to resolution. But here the problem is one of an absolute refusal to perform work properly requested. As such, resolution is not possible in the manner noted above. The infraction was indeed a serious one warranting the termination.

The Court concludes further that plaintiff's discharge was not effected out of retaliation for her earlier charge filed with the E.E.O.C. The record shows clearly that the defendant readily made amends to plaintiff after her charge arising out of her maternity leave and that the defendant treated her fairly from the time of her return.

As a final matter, the Court again notes that warnings and, indeed a second chance, were given to the plaintiff before her discharge. As such, defendant has amply rebutted any charge of discrimination alleged. The Court will, therefore, enter judgment for defendant against plaintiff on both counts of the amended complaint.

Defendant has requested the payment of attorney's fees in this action. The defendant has not shown, however, that plaintiff's action was frivolous, unreasonable or without foundation. The Court concludes, therefore, that attorney's fees on its behalf are unwarranted. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Accordingly, defendant's request for attorney's fees will be denied.