Stephanie FLOWERS, Plaintiff,

v.

**AREA AGENCY ON AGING OF SOUTH-EAST ARKANSAS, INC., and Betty Bradshaw, Executive Director, Defendants.**

No. PB–C–82–146.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Oct. 24, 1983.

---

David E. Parker, Jr., Little Rock, Ark., for plaintiff.

Bart Mullis, Mullis, Davis & Chadick, Pine Bluff, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

This action was brought by plaintiff Stephanie Flowers against defendants Area Agency on Aging of Southeast Arkansas, Inc., and Betty Bradshaw, Executive Director, alleging inter alia that plaintiff Flowers was discriminatorily discharged because of her race. The case was tried to the Court on June 21, 22, and 23, 1983.

Defendant Area Agency on Aging of Southeast Arkansas, Inc. (AAASA), is an Arkansas non-profit corporation organized for the purpose of service delivery through a comprehensive and coordinated program and area plan of those services provided for by the Older Americans Act of 1965, as amended, 42 U.S.C. § 3001, *et seq.*

The AAASA is a designate area agency for service delivery by the State Office on Aging and Adult Services, a division of the Arkansas Department of Human Resources. (45 Federal Register No. 63, § 1321.61) 42 U.S.C. § 3025(c)(4). The AAASA receives annual funding from agencies of federal, state and local government, as well as individual contributions. AAASA is an employer as defined by 42 U.S.C. § 2000e(b).

The defendant AAASA serves a ten-county area in southeastern Arkansas, including the counties of Arkansas, Ashley, Bradley, Chicot, Cleveland, Desha, Drew, Grant, Jefferson, and Lincoln.

Defendant Betty Bradshaw is a white female who has served as executive director charged with responsibility for and accountability of defendant AAASA at all times since its formation on June 15, 1979. Defendant Bradshaw is a licensed practical nurse (LPN).

Plaintiff Stephanie Flowers is a black female who served as advocate for the noninstitutionalized elderly (legal advocate) from August 20, 1979, until May 19, 1980. Defendant Bradshaw was plaintiff's direct supervisor.

Plaintiff Flowers is a graduate of Philander Smith College and the Thurgood Marshall School of Law, Texas Southern University. She is presently a member in good standing of the Bar of the State of Texas and at the time of trial was engaged in the private practice of law in Texas.

Plaintiff failed the Arkansas Bar examination in both July 1979 and February 1980 and, therefore, was not a licensed attorney during her tenure of employment with the defendant agency.

No duty stated in the Job Description of Legal Advocate or Advocate required that the person employed in such capacity be a licensed attorney. Anne Kamber, a white female who assumed plaintiff's position subsequent to her discharge, had only a two-year Associate of Arts Degree and she performed the same tasks which plaintiff had performed.

There are eight designated Area Agencies on Aging within the State of Arkansas. At the time of plaintiff's employment only one other agency employed a law graduate in the position of Legal Advocate. All programs operated under a federal statutory waiver approved by the State Office on

Aging. It has a requirement that each agency have a staff attorney or a waiver.

The following evidence was produced at trial to establish plaintiff's prima facie case of racial discrimination:

Plaintiff is a black female who served as Advocate for the Noninstitutionalized Elderly (Legal Advocate) from August 20, 1979, until May 19, 1980.

Plaintiff successfully completed the three-month probationary period required by applicable personnel policies and thereafter became a permanent full-time employee.

Plaintiff's work performance was satisfactory prior to March 1980. (There is a sharp factual dispute as to her job performance after this date.) [1]

Plaintiff was discharged on May 19, 1980, by defendant Bradshaw and she was not given fourteen days prior notice as is required by the defendant agency's personnel policy manual. A white female, Anne Kamber, who had less formal education than plaintiff, was promoted to assume plaintiff's job responsibilities.

■■■ Assuming that plaintiff has established a prima facie case, the burden of production shifts to the defendants to rebut plaintiff's presumption of racially motivated discharge. To accomplish this, defendants must clearly set forth, through the introduction of admissible evidence, the reason for the employer's action. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendants' articulation must produce admissible evidence which would allow the trier of fact to conclude rationally that the employment decision had not been motivated by discriminatory animus. The trial court must evaluate evidence adduced in light of common experience as it bears on the critical question of discrimination. *United States Postal Service Board of Governors v. Aikens*, ⸺ U.S. ⸺, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

The defendants state that plaintiff was terminated for a bad attitude, inability to work with her co-workers, insubordination, and resistance to authority. Ms. Bradshaw's testimony, and testimony of others, clearly shows that plaintiff was insubordinate in disrupting a Board meeting by discussing matters not relating to her monthly report and not on the agenda. She was also insubordinate in that without prior authorization she requested a waiver of the requirement that she be a licensed attorney and a waiver of the necessity of having a scheduled biannual meeting in May 1980. The proof also showed that after failing the Bar examination the second time, plaintiff was argumentative and adversarial with the director, co-workers, and several clients. Ms. Bradshaw denied that plaintiff's termination was caused by her failure to pass the Bar examination or for any racial reason and the evidence supported her testimony.

Ms. Bradshaw testified that an affirmative action program was adopted by the agency in July 1979 which was amended March 12, 1981, and May 13, 1982. Funds were not allocated specifically for affirmative action purposes. However, costs in connection with affirmative action matters are allowable expenses and can be paid from budget line items such as training, advertising or pamphlets. Ms. Bradshaw testified that expenditures had been made for the program.

The AAASA director followed the steps as outlined in the affirmative action plan. Utilization review was performed annually to assess under-utilization of minorities, the aged, and women. The AAASA provides training for career development and does promote from existing work forces. All employees are paid equally for equal work without discrimination.

Defendant Bradshaw was pleased when Flowers applied for the job of Legal Advocate. She testified that she was personally acquainted with the plaintiff's father and recognized his ability as an attorney and as a part-time pastor. She stated she con-

1. The Court is assuming arguendo (without so ■■■■■■■) finding) that plaintiff met this requirement.

sidered Judge Flowers her friend and that his church had contributed money to the aging program. Since the agency had no staff attorney and since an affirmative action program had been adopted, plaintiff's selection appeared to be an excellent choice, if the applicant was qualified. Ms. Flowers' education and training so indicated.

More than once during the trial the plaintiff testified with some considerable degree of emotion that in addition to being discriminatorily fired, she was also discriminatorily hired because of her race and because of her father's standing in the community. The Court has been unable to understand the plaintiff's position on this matter. The Court finds nothing impermissible in considering these factors along with the applicant's qualifications when an affirmative action program has been adopted and the applicant is a graduate of an accredited law school as in this case.

Defendant Bradshaw frankly admitted that both she and the plaintiff were disappointed when Ms. Flowers failed to pass the Bar examination the second time. It would have upgraded the staff to have a licensed attorney. After her first failure plaintiff was given a 6-week leave of absence to study for the Bar examination, and on other occasions she was given time off to go to the law library. Ms. Bradshaw encouraged plaintiff in many ways.

However, the record reflects that after taking the Bar examination the second time, the plaintiff's attitude toward her work, toward the director, and toward her co-workers completely changed. It was not the examination failure but the change in attitude and work habits which caused plaintiff's termination.

The plaintiff called Betty Johnson and James Word, two black employees of the defendant agency as witnesses. Ms. Johnson is the agency's Information and Referral Specialist and Mr. Word is the agency's Ombudsman. Betty Johnson testified that the plaintiff's temper tended to flare up; that the plaintiff always spoke in a loud voice; that she observed plaintiff's rudeness to a fellow employee over an insignificant incident; that all employees were subject to the same sign-in, sign-out procedures; that the plaintiff complained to her that defendant Bradshaw was not a college graduate; and that a client called and she heard the plaintiff say in an aggravated voice, "What do you want me to do about it?"

Mr. Word testified concerning an incident which occurred on April 2, 1980, in which the plaintiff spoke to him in harsh, loud tones and accused him of trying to take over her job. He tried to explain to her that he was only following orders, but she continued to berate him until he left the room.

Both of these witnesses testified that they did not believe the defendant agency practiced racial discrimination in any way or that the plaintiff was terminated for discriminatory reasons.

Ms. Anne Kamber, a 58-year-old white female, was promoted to fill the position of Advocate on June 9, 1980, at a yearly earning of $10,600.00—a substantial reduction from the salary the plaintiff was receiving. Anne Kamber testified that the plaintiff was one of the rudest people with whom she had ever worked, and specifically recalled an incident which occurred around Thanksgiving 1979 when the witness called the plaintiff to inquire about a food basket for a client. Mrs. Kamber further testified that she had heard the plaintiff say to clients in a harsh tone of voice, "What do you want me to do about it?"

Nelson Thompson, retired school teacher and black member of the Board, testified that he was present at the March 13, 1980, meeting where plaintiff was ruled "out of order" by the chairman. He also stated her conduct was rude and disrespectful and that she should have been terminated.

Even though the plaintiff attempted to rebut previous testimony concerning her conduct by stating that she was "kind, patient, and thoughtful," the Court finds that evidence was to the contrary. The record reflects that Ms. Flowers was intelli-

gent and attractive but she also was inconsiderate and impatient with others at times. From plaintiff's demeanor at trial, as well as the testimony heard, the Court is of the opinion that Ms. Flowers either already has become or will become a very successful private practitioner. In this career plaintiff will be in charge of handling her cases and making major decisions herself which appears to be more in line with her personality than that of being a team player.

It is evident that the plaintiff's attitude toward her supervisor, her fellow employees and her clients progressively deteriorated. The Court is of the opinion that the frustration felt by the plaintiff as a result of her failure to pass the Bar examination on two occasions was the primary factor behind her deteriorating job performance and attitude. She was also upset because defendant Bradshaw and others who were in positions superior to hers did not have a college degree and received higher salaries. None of these factors had anything to do with race.

■ An employer is free to terminate an employee, white or black, for whatever reason, absent constitutional violations or impermissible racial discrimination. See *Pearson v. Borden Metal Products Co.*, 434 F.Supp. 840 (N.D.Ala.1977).

■ Insubordination is ample reason for discharge. *Sutton v. Addressograph-Multigraph Corp.*, 481 F.Supp. 1148 (E.D.Mo. 1979), *appeal dismissed*, 627 F.2d 115.

■ The defendants have carried the burden of rebutting a prima facie case (if such were made) by articulating legitimate, nondiscriminatory reasons for the employment action taken. Ms. Flowers did not show these reasons to be pretext.

Plaintiff has also alleged that other black employees have been damaged by disparate treatment and unlawful discriminatory practices engaged in by the defendants. The Court has carefully considered these contentions and finds that there is no substantial evidence to support them. Accordingly, plaintiff's request for injunctive relief must be denied.

Defendants maintained a Personnel Policy Manual, dated July 1, 1979, which provided for progressive disciplinary procedures. The policy manual provides for reprimand, probation, suspension, and termination. Defendants failed to follow the appropriate procedure regarding written reprimand nor was plaintiff placed on disciplinary probation. Instead, defendant Bradshaw requested a closed executive session of the AAASA's Board of Directors on May 7, 1980, and presented a request for authority from the Board to fire plaintiff Flowers. Plaintiff Flowers was not present to voice her concerns. Authority to fire plaintiff by resolution passed unanimously.

The record reflects that neither Ms. Bradshaw nor the Board acted pursuant to the procedures governing disciplinary matters set forth in the agency's personnel policy and procedures manuals. Ms. Bradshaw stated that any attempt to apply formal procedures would be futile because of plaintiff's insubordination. Plaintiff neither received a written reprimand nor probation and application of procedures of progressive discipline.

The applicable discipline procedure provided that an employee shall be reprimanded by written memorandum, receipt acknowledged, after having previously received verbal reprimand. Receipt of two written reprimands within one calendar year shall place an employee on probation for a period not to exceed thirty days. Notice of probation stating the conduct constituting cause for reprimand and conditions of probation should be given, receipt acknowledged. Paragraph X of the defendant agency's disciplinary procedures provides that an employee may be involuntarily terminated after two weeks notice when one performs in an unsatisfactory manner while on probation. The defendants failed to afford plaintiff the procedural due process of established disciplinary procedures.

Plaintiff and her attorney were allowed a limited appearance before the Board of Directors on May 29, 1980, but it was not a meaningful hearing nor was it in the na-

ture of a due process hearing. According to the testimony of the plaintiff, the purpose of their appearance was to request the Board to give her a full hearing to present her side of the controversy. This was never done.

In *Pollock v. Baxter Manor Nursing Home*, 716 F.2d 545 (8th Cir.1983), the Court stated:

"On appeal, Pollock's counsel concedes that the district court's finding that the "allegations were true is not error. However, we find that Pollock was not afforded procedural due process due to the failure by the nursing home to hold a termination hearing in which Pollock could present witnesses and other relevant evidence. A fundamental purpose of the due process clause is to allow the aggrieved party the opportunity to present his case and have its merits fairly judged. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 [102 S.Ct. 1148, 1156, 71 L.Ed.2d 265] (1981). Pollock was not given such an opportunity. Thus, the issue becomes whether Pollock is entitled to damages to remedy the lack of due process afforded her by the nursing home.

"In *Carey v. Piphus*, 435 U.S. 247 [98 S.Ct. 1042, 55 L.Ed.2d 252] (1978) the Supreme Court held:

'Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.'

"435 U.S. at 266 [98 S.Ct. at 1054] (citations omitted, footnote omitted)."

■ In the *Pollock* case the court reached the conclusion that since the nursing home refused to conduct a due process hearing for plaintiff, Pollock's rights had been violated and she was entitled to nominal damages of $1.00 and reasonable attorney's fee. In the instant case an analogous situation is presented and plaintiff Stepha-

nie Flowers is entitled to award of nominal damages of $1.00 because she was not accorded procedural due process in connection with her termination.

Plaintiff testified that she received her two-week separation pay but, although requested several times, she was never reimbursed for her costs and mileage expense amounting to $92.00 which she incurred prior to termination. Her positive testimony on this issue was not refuted by defendant agency.

Accordingly, judgment is entered for plaintiff in the sum of $93.00 and all other claims are dismissed with prejudice except an appropriate attorney's fee for the limited success achieved in this case.

Plaintiff's attorney is directed to present his request for fee to defense counsel, and the Court would urge the attorneys to reach an agreement as to the amount of allowable attorney's fee, if possible.

If counsel are unable to reach an agreement within ten days, then plaintiff's attorney may submit his affidavit for fee within ten days thereafter and defense counsel will have a like period within which to reply.

Judgment will be entered in accordance with this Memorandum Opinion after the issue of attorney's fee has been resolved.