9 F.3d 108
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John MATTHEWS, Plaintiff-Appellant,
v.
CITY OF MAPLE HEIGHTS, Defendant-Appellee.
 No. 92-3738.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1993.
 
 Before: KENNEDY and RYAN, Circuit Judges; and BROWN, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff John Matthews appeals a judgment for the defendant following a bench trial in this Title VII action alleging racial discrimination in employment training and discipline. Matthew argues that the City of Maple Heights discriminated against him because of his race and fired him with a retaliatory motive. We conclude that the district court did not err in finding that Matthews was fired for a legitimate reason, and we affirm the district court's judgment.
 
 I.
 
 2
 John Matthews, a black man, worked for the City of Maple Heights for nearly twenty-five years until the city fired him in 1986. During his tenure, Matthews worked primarily as a laborer, and his duties required him to operate a variety of equipment: furnaces, a flusher machine, a house sewer snake machine, and occasionally a sewer rodder machine. At the center of this case lies Matthews's troubled relationship with the sewer rodder.
 
 
 3
 Matthews worked for the city for over twenty years before he was asked to operate the sewer rodder in 1984. Matthews never received any formal training on how to operate the rodder machine. He did, however, receive training on how to operate other equipment as part of the city's on-the-job training policy; an informal practice that amounted to a kind of hands-on, "seeing and doing" training.
 
 
 4
 Despite his lack of formal training, Matthews, through his own ingenuity, managed to operate the rodder forty-seven times over the next two years. On one occasion, he was injured while operating the machine, but he subsequently operated it without mishap. On the afternoon of January 9, 1986, however, after operating the rodder in the morning, Matthews returned from lunch and told his supervisor, John Mahoney, that he did not know how to operate the machine. When Matthews refused to operate the sewer rodder, Mahoney sent him home. The next day Matthews returned to work but again refused to operate the sewer rodder, and again he was sent home.
 
 
 5
 The following week on January 15, the city held a personnel hearing attended by Matthews, his supervisor Mahoney, the city's personnel director Michael Dernyar, and representatives from Matthew's union. After the hearing, Matthews was suspended for a total of four days; one day for his first refusal to work, three for his second refusal. Additionally, the city placed Matthews on six months probation and warned him in writing that any subsequent refusal to accept a work assignment would result in his termination.
 
 
 6
 In a meeting on the afternoon of January 23, Dernyar instructed Matthews to return to work the following day. Matthews then showed Dernyar a copy of a complaint he had filed that morning with the Equal Employment Opportunity Commission charging the city with racial discrimination. Matthews offered to withdraw the complaint if the city would assign him to a job other than operating the sewer rodder.
 
 
 7
 The city reiterated its position that Matthews must perform whatever work was assigned to him. When Matthews reported to work the next day and refused for the third time to work on the sewer rodder, the city again suspended him pending a second hearing. After the second hearing on January 29, the city fired Matthews.
 
 
 8
 After exhausting his administrative remedies, Matthews sued the city in federal court alleging violations of Title VII of the 1964 Civil Rights Act. 42 U.S.C. Sec. 2000(e), et seq. Specifically, Matthews alleged in his complaint that (1) the city had trained white employees to run the sewer rodder but had not trained him, the only black employee in the sewer department; and that (2) the city treated white employees who refused job assignments less severely than it treated him.
 
 
 9
 After a four-day bench trial, the district court rendered a verdict for the city. The district court found that the city had fired Matthews for a legitimate reason, namely his continued refusal to operate the sewer rodder. The district court could find no evidence that the city attempted to retaliate against Matthews for filing an EEOC complaint. Matthews now appeals.
 
 II.
 
 10
 At the outset, we note that our standard of review in this Title VII discrimination case is a restricted one: under Fed.R.Civ.P. 52(a), a district court's findings of fact should not be reversed unless "clearly erroneous." Zamlen v. Cleveland, 906 F.2d 209, 217 (6th Cir.1990), cert. denied, 111 S.Ct. 1388 (1991). The issue is not whether the district court reached the best conclusion, but whether the evidence in the record as a whole supports the lower court's findings. Heights Community Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir.1985), cert. denied, 475 U.S. 1019 (1986). Moreover, when the district court bases its findings on determinations of the credibility of witnesses, its findings are entitled to even greater deference because only the trial judge has the unique opportunity to observe firsthand the witnesses' demeanor, understanding, and overall credibility. Wooldridge v. Marlene Indus. Corp., 875 F.2d 540, 543 (6th Cir.1989) (citing Wainwright v. Witt, 469 U.S. 412 (1985)).
 
 
 11
 Under Title VII, once the plaintiff establishes a prima facie case, a presumption arises that the employer unlawfully discriminated against the plaintiff. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). The employer may rebut this presumption by articulating some legitimate, nondiscriminatory reason for the employee's discharge. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1972). Once the employer offers a legitimate reason for the discharge, the employee must demonstrate that the employer's stated reason for termination was a pretext for his firing. Id. In this case, the district court found that Matthews established a prima facie case, but after hearing the testimony of city officials, Matthews's supervisor, and Matthews himself, the court concluded that the city fired Matthews for a legitimate, nondiscriminatory reason, namely his repeated refusals to operate the sewer rodder.
 
 
 12
 Matthews contends that he did not know how to operate the sewer rodder because, unlike the white employees, he was never trained. The district court found Matthews's testimony incredible in this regard. First, each time Matthews used the sewer rodder he completed a "rodder report" which detailed the location, date, and type of work done with the machine, and these sixty-two reports record Matthews's familiarity and proficiency with the rodder. Second, both Matthews's union steward and supervisor testified that they never received a complaint from Matthews regarding a lack of training. Finally, Matthews admitted in an accident report that the operation of the sewer rodder was "work to which he was accustomed." We do not think the district court erred in concluding that the city had no obligation to offer Matthews formal training in use of the rodder because the city assumed, quite reasonably, that Matthews knew how to operate the rodder machine.
 
 
 13
 Next, Matthews contends that he was disciplined more severely than his white counterparts for refusing to work. The district court found that the incidents of discipline involving white employees were distinguishable, and we agree. We can find no evidence that the city's treatment of Matthews was more severe than that of white employees. Indeed, Matthews's suspension and termination fell squarely within the letter of the city's progressive disciplinary policy. Normally, the city's disciplinary process consists of five steps: oral warning, written warning, one-day suspension, three-day suspension, and termination. Under the disciplinary policy, certain offenses, including the refusal of a job assignment, merit immediate suspension pending a hearing. In sum, Matthews's insubordination was a serious infraction. An employer may properly fire an employee who refuses to perform an assigned task. See Sutton v. Addressograph-Multigraph Corp., 481 F.Supp. 1148, 1151-52 (E.D.Mo.1979), appeal dismissed, 627 F.2d 115 (8th Cir.1980) (per curiam ). Plaintiff's refusal to work was a more serious infraction than his coworkers', and for that reason he is not similarly situated to them.
 
 
 14
 Finally, Matthews claims that he was fired in retaliation for filing a complaint with the EEOC. Under the civil rights laws, an employer may not discriminate against an employee for attempting to protest discriminatory conditions of employment. Cooper v. North Olmsted, 795 F.2d 1265, 1270 (6th Cir.1986). To support a claim of retaliatory discharge, a plaintiff must prove that: (1) he engaged in protected activity; (2) he was the subject of adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. Id. at 1272.
 
 
 15
 Matthews has failed to establish the critical link between his filing of an EEOC complaint and his termination. Matthews's only support for this claim is that he was fired within a few days of filing his complaint. It is well established, however, that the mere fact that an employee is discharged after filing a discrimination claim is not sufficient to support an inference of discrimination. Id. The civil rights laws do not preclude an employer from disciplining an insubordinate employee, nor do they shield an employee from the consequences of refusing to do his duty. Brown v. Ralston Purina Co., 557 F.2d 570, 572 (6th Cir.1977). The evidence supports the district court's conclusion that the city fired Matthews for his repeated refusal to perform his assigned work. We find no basis to conclude that the district court's conclusion was clearly erroneous.
 
 III.
 
 16
 For the foregoing reasons, we AFFIRM the district court's judgment for the defendant.