**ALFRED FAUMUINA, Plaintiff,**

**v.**

**AMERICAN SAMOA GOVERNMENT EMPLOYEES RETIREMENT FUND and AMERICAN SAMOA GOVERNMENT, Defendants.**

High Court of American Samoa
Trial Division

CA No. 126-96

August 20, 1997

112

Before RICHMOND, Associate Justice, LOGOAI, Associate Judge,
SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, Jennifer L. Joneson
For Defendant, Cheryl A. Crenwelge, Assistant Attorney
General

## OPINION AND ORDER

### Introduction

Plaintiff Alfred Faumuina ("Faumuina"), was employed by defendant American Samoa Government Employees Retirement Fund ("ASGERF") from March 1974 to March 1975 and from August 1976 to April 1996. When Faumuina began his employment with the ASGERF, and when he rejoined the ASGERF in August 1976, Faumuina was a "career service employee" as described in A.S.C.A. § 7.1415.

In 1986, the American Samoa Legislature enacted Public Law 19-37 to protect the ASGERF from undue political influence and improve the efficiency of the ASGERF's operations. Public Law 19-37 amended A.S.C.A. § 7.1415 to classify all ASGERF employees as "employees of the government, under the direction of the board, not career service employees." On June 4, 1986, Faumuina signed a written acknowledgment that he "will be hired as a Non Career Service, Government Employee of A.S.G.E.R.F."

On March 1, 1993, the ASGERF's Executive Director, George Odom ("Odom"), sent a letter to Faumuina complaining of Faumuina's extended absences from the office during working hours and excessive contact with "ASG officials." On December 7, 1994, Odom sent a lengthier letter to Faumuina registering similar criticisms.

On April 12, 1996, Faumuina was arrested and charged with possession of a controlled substance. After the arrest, Faumuina was directed to stop working and stay out of the Fund's office. He utilized accumulated annual leave. On April 23, 2996, Faumuina's counsel contacted Odom and expressed Faumuina's desire to return to work. Odom declined to allow Faumuina to return to work.

Shortly thereafter, Faumuina contacted two members of the Fund's Board of Trustees, Gata E. Gurr ("Gurr") and Magalei Logovii ("Magalei"), for advice concerning his employment status. On April 30, 1996, Odom sent a letter to Faumuina stating that Faumuina was terminated because Faumuina "flagrantly disregarded [Odom's] instructions" by approaching "several Trustees individually to urge their assistance in overturning administrative decisions [Odom] communicated to [Faumuina] concerning [Faumuina's] work status and payroll situation."

On September 9, 1996, Faumuina sued the ASGERF and the ASG for wrongful discharge and unconstitutional deprivation of due process. This court concluded a trial on the merits on June 16, 1997.

114

A. The Just Cause Clause

Faumuina has conceded that he was not technically a career service employee of the ASG at the time that he was terminated. He thus acknowledges that the Fund offered, and he accepted, a new employment relationship, where Plaintiff would relinquish his rights as an A.S.G. career service employee and receive rights to which a "Non Career Service, Government Employee of A.S.G.E.R.F." was entitled. Thus, our inquiry is limited to the question of whether, under the new contract, Faumuina had the right to continued employment unless Faumuina provided the ASGERF with just cause for terminating his employment.

 The presumption that employment is at-will, *Palelei v. Star Kist Samoa, Inc.*, 5 A.S.R.2d 162, 165 (Trial Div. 1987), can be rebutted with evidence of the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstances of the case. *See Roberts v. Atlantic Richfield Co.*, 568 P.2d 764, 769 (Wash. 1977) (citing *Perry v. Sinderman*, 408 U.S. 593 (1972)); *Shebar v. Sanyo Business Systems Corp.*, 544 A.2d 377, 382 (1988). From this evidence, a court may infer that a particular employment contract contained a just cause clause.

*1. Intent of the parties.*

Faumuina and former coworker Sunu`i Tofi ("Tofi") testified that ASGERF representatives made oral statements that ASGERF employees who continued employment with ASGERF after the enactment of PL 19-37 would receive essentially the same package of benefits that ASG career service employees received. Faumuina and Tofi indicated that these representations were very important to them, as they probably would not have accepted the new contracts if they had known that they were losing their job security in the process. The ASGERF, in its defense, presented no evidence that changing the official status of ASGERF employees was designed to eliminate ASGERF employees' job security. Therefore, even though there was no express agreement with respect to job security in the written document, the evidence presented at trial favors Faumuina's claim that the parties intended for Faumuina and other ASGERF employees to have a contractual "just cause" provision.

*2. Business Custom and Usage.*

There was no direct evidence at trial regarding the "custom and usage" of governmental employment in American Samoa. However, based on our own personal experience, we find that non-temporary government employment generally contemplates a relationship with greater security

than an at-will relationship, even if they are not "career service" positions. In the instant case, PL 19-37 did not "privatize" the ASGERF, and the ASGERF remained a governmental institution. Thus, we conclude that business custom in the "industry" of public service favors the conclusion that Faumuina's employment contract was not subject to arbitrary termination.

### 3. Nature of the Employment.

Faumuina held the position of Deputy Director of ASGERF, a position of substantial authority. Given the importance of Plaintiff's position to the overall operation of ASGERF, we conclude that this piece of evidence supports Faumuina's claim that his position contained a "just cause" clause.

### 4. The Situation of the Parties.

The evidence at trial indicated that at the time Faumuina and other ASGERF employees signed new contracts, the employment relationships between the ASGERF and its employees were mutually satisfactory.

Furthermore, when the ASGERF assumed its new form after the enactment of PL 19-37, it enjoyed valuable efficiency gains by retaining the existing ASGERF staff. In effect, the ASGERF benefited substantially during 1986 and 1987 from the employee loyalty that had, in part, been inculcated by the verbal promises of job security. Thus, the evidence of the parties' situations when the contract was formed buttresses Faumuina's claim that the new deal simply prolonged, in reality if not nominally, the earlier "career service" employment relationship.

### 5. Circumstances of the Case.

Though it is theoretically possible for an employee to relinquish voluntarily a right or benefit due him under an employment contract, we find it very difficult to believe that the entire ASGERF staff would have relinquished their important contract rights without protest and without some form of new consideration. Again, this circumstantial evidence backs Faumuina's claim that position that the parties understood that Faumuina would not lose his job security rights when they formed the new contract.

The presumption of at will employment has been effectively rebutted by direct and circumstantial evidence. Faumuina did not have merely a subjective, personal belief that he would be employed as long as he did his job in a satisfactory manner. Rather, in light of ASGERF oral representations, the parties' respective intentions, business custom and usage, the nature of the employment, the situation of the parties, and the circumstances of the case, we can only conclude that Faumuina did, indeed,

116

have an understanding and agreement with the ASGERF that his employment contract would be terminated only for just cause.

## B. Termination for Cause

Odom testified that he had repeatedly issued verbal and written warnings to Faumuina regarding Faumuina's practice of directly contacting members of the ASGERF Board of Trustees regarding personal and ASGERF business. Defendants argue that when Faumuina approached Trustee Gata Gurr regarding Faumuina's employment situation, he violated an express written directive of ASGERF's Executive Director and committed an act of insubordination that justified termination "for cause." In support of the proposition that failing to obey the rules, orders and instructions of an employer is sufficient cause justifying discharge, defendants cite *Walker v. Washington*, 627 F.2d 541 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 994, 66 L. Ed. 2d. 292 (198?); *Farnell v. Albuquerque Publishing Co.*, 589 F.2d 497 (10th Cir. 1978); *Joseph E. Seagram & Sons, Inc. v. Bynum*, 191 F.2d 5 (8th Cir. 1951); *Flowers v. Area Agency on Aging of Southeast Arkansas, Inc.*, 574 F. Supp. 71 (D. Ark. 1983), *appeal dism'd*, 738 F.2d 444; *Farrakhan v. Sears, Roebuck & Co.*, 511 F. Supp. 893 (D. Neb. 1980).

However, as the *Bynum* court recognized, a servant is only bound to obey *reasonable* orders of the employer. 191 F.2d at 17 (citations omitted). In defendants cited cases, the expectations placed on the employees were reasonable and served to further a legitimate business purpose. *Walker*, 627 F.2d at 543 (employee refused to follow employer's directives to fill out program activity records, which were "[p]art of [employee's] job"); *Farnell*, 589 F.2d 497 (terminated employee competed with company in violation of company's rules and employee's common law duty); *Bynum*, 191 F.2d 5 (employees' failure to deliver goods according to employer put employer in breach of contract with buyer).

In contrast, Odom's "gag order" was so broad that it lost its legitimacy. Faumuina was prohibited from initiating contact with any member of the Board of Trustees about any topic, personal or professional. When Faumuina approached Gurr about assistance in reversing Odom's decision regarding Faumuina's suspension, Faumuina was not attempting to subvert Odom's authority or to undermine morale at the ASGERF, but was merely pleading for advice from a friend as to how he might maintain his livelihood during a period of tremendous stress. We cannot allow an employee with a "just cause" contractual benefit to be terminated for an act of desperation which has no real impact on the employer's operational efficiency. Thus, we find that insubordination was merely a pretext for Odom's personal animosity towards Faumuina, and that Faumuina was terminated without *just* cause.

117

C. Due Process Claim

To assert a cause of action for deprivation of due process, a party must demonstrate that it has a constitutionally protected claim of entitlement to a "liberty" or "property" interest. *See Board of Regents v. Roth*, 408 U.S. 564, 570 (1972) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Procedural due process rights can attach to a contractual entitlement, especially where, as here, a person's "good name, reputation, honor, or integrity is at stake." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *see also Leis v. Flynt*, 439 U.S. 438, 442 (1979); *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 467 (1981) (Brennan, J. concurring). A property interest in continued employment is "created and defined by the terms of the appointment. *Roth*, 408 U.S. at 578. In the instant case, because we have concluded that Faumuina's contract with the ASGERF provided for continued employment absent sufficient cause, we must also conclude that Faumuina was entitled to due process before being deprived of this "property" interest. *Cf. id.*

Plaintiffs primarily criticize the absence of procedural due process in Faumuina's termination. In *Ferstle v. American Samoa Gov't*, 7 A.S.R.2d 26 (Trial Div. 1988), the High Court stated that the practical requirements of procedural due process vary with the circumstances and particular demands of the case and usually require something less than a full evidentiary hearing. *Id.* at 49. As long as the claimant has notice and an opportunity to be heard, the claimant has been afforded adequate procedural due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 84 L. Ed. 2d 494, 506 (1985).

In the instant case, Faumuina's letter of termination adequately spelled out the proffered reasons for his termination, but the letter was never delivered to Faumuina. He thus had no advance notice of the charges against him, such that Faumuina was unable to gather evidence and solicit witness testimony to defend against the charges against him, at least in a meaningful way. We think the procedure utilized for terminating Faumuina did not substantially comport with the requirements of procedural due process.

D. Damages

During the course of discovery, defendants learned that Faumuina had accepted in 1981 an $800 gratuity from an ASGERF member to perform his official duties. Such conduct is clearly in violation of the prohibitions on gifts contained in Administrative Manual of Executive Regulations Chapter 10.0411 (1964) and A.S.A.C. § 4.0708 (1981). Defendants argue that we should bar recovery for the unlawful termination because he could have been terminated for accepting this gift. Faumuina, in turn, proffers a

118

pathetic justification for such a gross ethical violation: other employees sometimes accept free lunches.

 The United States Supreme Court has refused to absolutely bar a plaintiff employee's recovery of damages where a defendant employer took an adverse employment action against the employee for an illegal reason, but subsequently discovered evidence that would justify a lawful termination. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 357, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). The Court opined that an absolute bar against recovery would corrupt the deterrent value of the law, as well as the law's intent to compensate injured victims. At the same time, the Court posited that "[o]nce an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit. *McKennon*, 513 U.S. at 362, 115 S.Ct at 886. Thus, the Court authorized courts to review the factual permutations and the equitable considerations on a case-by-case basis and fashion relief accordingly. The Court discouraged generally the use of reinstatement and back pay as a remedy because it "would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *Id.*

 In the instant case, we find as a matter of fact that the defendants were unaware of the $800 gratuity, and that Faumuina can be lawfully discharged for this conduct. Therefore, we conclude that Faumuina is entitled to lost wages from April 30, 1996 to the date on which defendants discovered the evidence of Faumuina's improper acceptance of a gift, *Id.* at 362, minus the amount of money he earned during that time period pursuant to his duty to mitigate damages.

## Conclusion and Order

We conclude that Faumuina's employment contract protected him from arbitrary termination; that Faumuina was not terminated for just cause; that Faumuina was terminated without procedural due process; and that Faumuina is entitled to damages for his unlawful discharge in an amount to be determined at a post-trial hearing consistent with this opinion. At the hearing, we will hear evidence as to the date on which the defendants first learned of Faumuina's earlier illegal conduct, and the dates of Faumuina's employment with the ASG election office.

It is so Ordered.