**Celso Lopez LOPEZ, Plaintiff,**

v.

**M. ARAN; J. Figueroa; I. Moreno, individually and as agents of the U.S. INS; Allen C. Nelson; and James H. Walker, Defendants.**

**Civ. No. 83–2388 (JP).**

United States District Court,
D. Puerto Rico.

Oct. 31, 1984.

Jose A. Lugo, Rio Piedras, P.R., William Santiago Sastre, San Juan, P.R., for plaintiff.

Eduardo Toro Font, Asst. U.S. Atty., Lolita Semidey, I.N.S., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action brought by Celso López López (plaintiff) pursuant to the Fourth and Fifth Amendments of the United States Constitution, seeking declaratory and injunctive relief against INS Commissioner Allen Nelson, INS District Director James Walker and INS agents M. Aran, J. Figueroa and I. Moreno in their official capacity for abuse of their statutory authority. In addition, plaintiff is seeking compensatory and punitive damages against defendants Aran, Figueroa and Moreno in their personal capacity under the constitutional tort theory established in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff has invoked the jurisdiction of 28 U.S.C. § 1331 to support his *Bivens*-type claim.

On July 10, 1984, defendants filed a Motion to Dismiss and/or for Summary Judg-

ment pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure. This Court takes said motion as one for summary judgment. On August 9, 1984, plaintiff filed an Opposition to Motion to Dismiss and/or for Summary Judgment. On the basis of the defendants' Motion for Summary Judgment and plaintiff's Motion in Opposition, together with the accompanying affidavits and documents submitted, this Court reaches the following determinations of fact and law with regard to plaintiff's claim for compensatory and punitive damages against defendants Aran, Figueroa and Moreno.

## A. FINDINGS OF FACT:

The material facts required for this Court's disposition of plaintiff's *Bivens* -type action are not in dispute.

1. Defendant Ivette Moreno was stationed and working as an agent of the United States Immigration and Naturalization Service (hereinafter INS) at the Isla Verde International Airport in Puerto Rico on or about July 16, 1982. Defendants María del Mar Arán and Juan E. Figueroa were both stationed and working as agents of the INS at the Isla Verde International Airport on or about October 2, 1982.

2. Plaintiff Celso López López is a United States citizen and a resident of the Commonwealth of Puerto Rico. He is also an attorney with experience in immigration law.

3. Plaintiff filed this complaint on September 30, 1983.

4. On or about July 16, 1982, after 4:00 p.m., plaintiff approached Gate No. 7 at Isla Verde International Airport to board a Capitol Airlines flight bound for New York City. Defendant Moreno was conducting pre-boarding immigration inspection of passengers enroute to New York.

5. As part of the inspection, defendant Moreno questioned plaintiff about his citizenship. Plaintiff did not answer and instead presented a card to defendant which read "Do you suspect that I am an alien?" Defendant Moreno then proceeded to conduct inspection of other passengers in line. Plaintiff then asked defendant whether she would let him go through. Agent Moreno responded affirmatively, explaining that she knew from his answer that he was Puerto Rican. Plaintiff then verbally challenged defendant Moreno's authority to question him regarding his citizenship before walking away to board his flight.

6. On or about October 2, 1982, plaintiff approached Gate No. 3 at Isla Verde International Airport in order to board an Eastern Airlines flight bound for Baltimore-Washington International Airport. Defendants Arán and Figueroa were conducting preflight immigration inspection near the Eastern departure gate.

7. As plaintiff passed the agents, defendant Figueroa asked plaintiff his country of citizenship. Plaintiff did not reply, but looked at the agents as he proceeded past them to place his luggage on the conveyor belt at the security inspection point. The defendants followed plaintiff to the security checkpoint and agent Figueroa repeated the question. Plaintiff then presented the prepared card which read "Do you suspect that I am an alien?" Defendant Arán then made a statement which evidenced her knowledge of the July 16, 1982 incident with defendant Moreno.

8. As agent Arán proceeded to conduct pre-inspection of other passengers, agent Figueroa continued the attempt to inspect plaintiff. Plaintiff's luggage had not been allowed to go through the security X-ray.

9. After Arán rejoined Figueroa, plaintiff attempted to pass through the departure gate, but was impeded by a security guard. Plaintiff then sought out an Eastern Airlines Supervisor, after which he retrieved his luggage and left the departure area without boarding the plane.

## B. CONCLUSIONS OF LAW:

1. *Whether Plaintiff Has Properly Pleaded a Bivens-Type Cause of Action.*

Defendants Arán, Figueroa and Moreno argue that plaintiff, naming them "individ-

ually and as agents" in the caption to the complaint, is attempting to recover damages from them in their official capacity. In order to do so, say the defendants, plaintiff must sue under the Federal Tort Claims Act (hereinafter FTCA), not directly under the Constitution in tort as done in *Bivens*. The government further argues that, since plaintiff has not exhausted his administrative remedies under the FTCA, plaintiff is barred from recovery of any damages against the United States in this Court.

Plaintiff appears to be in full agreement with defendant's conclusion that no recovery in damages against the United States is possible in this case. In his opposition to defendant's motion for summary judgment and in his supporting affidavit, plaintiff states that he is suing the agents under a *Bivens* action in their personal capacities only.

 There is no question that a *Bivens* action may be brought against federal officials in their individual capacity even if plaintiff could have instituted an action under the FTCA so long as said remedy is not equally effective. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Even assuming that plaintiff's intentional tort claims against the federal agents in this case met the exception to the exception provided in 28 U.S.C. § 2680 for suit under the FTCA, the advantages to plaintiff of the *Bivens* action over the FTCA remedy in allowing punitive damages and going beyond the limits of state law support plaintiff's right to opt for a *Bivens*-type remedy. Furthermore, there is no reason why plaintiff may not sue the government agents personally for damages while simultaneously suing the United States agency and the agents officially for injunctive and declaratory relief. *See American Association of Commodity Traders v. Dept. of the Treasury*, 598 F.2d 1233 (1st Cir.1979) (plaintiff could have sued federal agents personally while suing United States agency, although sovereign immunity of the United States would not be waived).

 Although plaintiff's complaint is somewhat obfuscated, it cannot be said that plaintiff has failed to properly plead a *Bivens*-type cause of action. Plaintiff has invoked the jurisdiction of 28 U.S.C. § 1331 as required. In addition, plaintiff has asserted constitutionally protected rights under the Fourth and Fifth Amendments. Plaintiff has also stated a cause of action for damages, charging the federal agents with commission of the torts of false imprisonment and intentional infliction of emotional distress. Plaintiff has prayed for compensatory damages in the amount of $21,030.00, which includes $1,000.00 for loss of a day in school in Washington, D.C., and $30.00 for ground transportation resulting from plaintiff's missed flight, as well as $10,000.00 in punitive damages.

Furthermore, neither of the situations in which a cause of action under *Bivens* can be defeated is present in this case. First, this case involves no special factors counseling hesitation in the absence of affirmative action by Congress since the federal agents sued here enjoy the adequate protection of the qualified immunity defense. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Second, there is no explicit congressional declaration that an alternative exclusive remedy exists; plaintiff has the option of electing between a FTCA and a *Bivens* remedy. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

2. *Whether Bivens Action Against Defendant Moreno Is Time-Barred.*

 The government has argued that the one year statute of limitations for tort actions in Puerto Rico should be applied to *Bivens*-type actions as it has been to civil rights actions under 42 U.S.C. § 1983. *See, e.g., Ramírez de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 318 (1st Cir.1978) (applying 31 L.P.R.A. 5298 to bar plaintiff's 1983 action). If applied, plaintiff's action against Ivette Moreno for her conduct on or about July 16, 1982 would be barred.

There is no direct Supreme Court ruling on this issue. However, the Supreme

Court has held that the body of law governing official immunity under 42 U.S.C. § 1983 should apply to *Bivens* -type actions as well in order to avoid the incongruous treatment which would otherwise result, especially where federal and state officials are sued for the same civil rights violations. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Although the Circuits which have addressed the issue of a *Bivens* statute of limitations have agreed that the most analogous state law statute of limitations should be applied, there is disagreement over whether to use the limitations period prescribed for tort actions, for actions not otherwise prescribed by law, or for other analogous causes of action. *E.g., Beard v. Robinson*, 563 F.2d 331 (7th Cir.1977); *Regan v. Sullivan*, 557 F.2d 300 (2d Cir.1977).

There exists persuasive precedent directing the application of the one-year Puerto Rico tort statute of limitations in this case. In an unpublished *per curiam* opinion in 1980, the First Circuit affirmed this Court's application of the one-year tort statute of limitations to a *Bivens* action decided in an unpublished opinion of this Court written by the Chief Judge of the District Court of Rhode Island sitting by designation. *Guillen de Santiago v. Simonpietri-Monefeldt*, 618 F.2d 94 (1st Cir.1980), *aff'g Guillen de Santiago v. Simonpietri-Monefeldt*, No. 78–1701 (D.P.R. August 10, 1979). Furthermore, in the conference held with this Court pursuant to the Initial Scheduling Order on June 19, 1984, the parties agreed that plaintiff's action against defendant Moreno was time-barred. Plaintiff cannot now be heard to dispute the application of the one-year limitations period to bar the claim against defendant Ivette Moreno.

3. *Whether Defendants Aran And Figueroa Are Protected From Liability For Damages Under The Doctrine Of Qualified Immunity.*

■ In order to survive defendants' Motion for Summary Judgment, plaintiff's claim must overcome the affirmative defense of qualified immunity raised by the federal officials. This common law immunity defense, as developed in recent litigation under 42 U.S.C. § 1983, is to be applied in equal fashion to actions brought under *Bivens. Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895. The defense of qualified immunity shields government officials from liability for civil damages in the exercise of discretionary functions insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). (S.Ct. retaining objective aspect of the so-called "good faith test" but rejecting the subjective "without malice" standard).

■ This standard applies to defendants' functions at issue in this case since, in determining whether persons questioned have submitted sufficient proof of U.S. citizenship or legal immigrant status, the functions of an immigration inspector are necessarily discretionary. *E.g., DePass v. U.S.*, 479 F.Supp. 373 (D.C.Md.1979) (immigration inspector must make ad hoc, subjective evaluation involving broad discretion as to whether sufficient proof of U.S. citizenship has been submitted).

In this case, the actions of defendants Aran and Figueroa are protected by qualified immunity only if their conduct in stopping and questioning plaintiff as to his citizenship status did not violate any constitutional or statutory right clearly established at that time. Plaintiff has alleged that defendants' conduct violated his Fourth Amendment right to be free of unreasonable searches and seizures, his Fifth Amendment rights to equal protection, due process of law before deprivation of liberty, and his right to interstate travel. In addition, plaintiff alleges that defendants exceeded their statutory authority.[1]

---

1. Plaintiff points for support to the language of 8 U.S.C. Sec. 1357(a)(1) and to a piece of legislative history. 1952 U.S.Code Cong. and Ad.News, 1653, 1709–10; Section 1357(a)(1) grants to INS

■ The question before this Court on Summary Judgment for purposes of evaluation of the qualified immunity defense raised against plaintiff's *Bivens* complaint is whether any of plaintiff's allegations involve rights which were clearly established by law and should reasonably have been known at the time the actions occurred. *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738. This Court today reaches no conclusion on the substance of plaintiff's claims, which will be decided at trial on plaintiff's actions for injunctive and declaratory relief. The Court merely evaluates the state of the law as it existed at the time the officials' conduct occurred.

### a) *Plaintiff's Fourth Amendment Claim*

Plaintiff alleges that his 4th Amendment right to be free from unreasonable searches and seizures was violated when the federal agent asked him whether he was a U.S. citizen. Plaintiff argues that the INS agents are authorized to interrogate only when they have reason to believe that someone is an alien. Plaintiff bases his argument in the assertion that the Isla Verde International Airport in Puerto Rico is not a border and therefore, the 4th Amendment requires the official to have reasonable suspicion before stopping and questioning any person regarding his or her citizenship or immigration status.[2]

Routine warrantless searches at the border or the functional equivalent of a border have been authorized by Congress, 8 U.S.C. § 1357(a)(1), and held to be consistent with the 4th Amendment. *Almeida-Sanchez v. U.S.,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The issue of whether the Isla Verde International Airport in Puerto Rico constitutes the functional equivalent of a border is critical to the resolution of plaintiff's 4th Amendment claim in this case. The Supreme Court's limited guidance in *Almeida-Sanchez* on what constitutes the functional equivalent

officers the power without warrant "to interrogate any alien or person *believed to be an alien* as to his right to be or to remain in the United States." (emphasis supplied). Whether the language of Section 1357(a)(1), as supplemented by the legislative history and interpretation of the Supreme Court and as read together with the rest of Title 8 and the pertinent Regulations, should be given the effect which plaintiff urges is a matter reserved for this Court's adjudication of plaintiff's claims to injunctive and declaratory relief.

Plaintiff has pointed this Court to no basis for a cause of action for damages against the defendants for abuse of statutory authority. *Compare Wheeldin v. Wheeler,* 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (no cause of action for damages arises within the meaning of 28 U.S.C. § 1331 under Federal statute granting no express cause of action) *with Chairez v. County of Van Buren,* 542 F.Supp. 706 (W.D.Mich.1982) (implied private right of action for violation of Immigration and Nationality Act concerning arrest of alien believed to be unlawfully in the United States). Thus, the doctrine of qualified immunity is not relevant to plaintiff's statutory claims.

2. In arguing that reasonable suspicion was absent in this case, plaintiff raises the fact that defendant Arán made a statement evidencing her knowledge of the July 1982 incident with agent Ivette Moreno. The exact content of this statement is in dispute. Plaintiff alleges that Arán's statement acknowledged that plaintiff, the person before her, was exactly the same person as the one who had the encounter with Ivette. In her affidavit of March 7, 1984, Arán claims that she recognized only a similarity between the person's conduct with Moreno in July and the person's conduct with her, Arán, in October. The dispute is irrelevant for purposes of the doctrine of qualified immunity. The subjective motivation of the Federal agent in stopping and questioning plaintiff as to his citizenship is no longer a part of the good faith test as outlined by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396. The essence of the test is the objective reasonableness of the agent's conduct. Even if, as plaintiff urges, defendant Arán believed plaintiff was the same person as the one whom Ivette Moreno stopped and ultimately allowed to pass, this belief does not necessarily and reasonably mean that she, like Moreno, was convinced that plaintiff was a U.S. citizen. Indeed, Moreno's belief itself was based on an inference from plaintiff's manner of speaking—an inference that he was Puerto Rican and thus, a U.S. citizen. Furthermore, plaintiff has alleged no similar hearsay belief on the part of defendant Figueroa, or even that defendant Figueroa heard Arán's statement. The scope of reasonableness does not require Figueroa to believe Arán, or Arán to believe Moreno; plaintiff's allegations of bad faith are not only irrelevant but illogical.

of a border has been subject to conflicting interpretation among the circuits. *Compare, e.g., United States v. Alvarez González,* 561 F.2d 620 (5th Cir.1977) *with U.S. v. Bowen,* 500 F.2d 960 (9th Cir.1977), *aff'd on other grounds,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975). If the Circuit Court judges themselves find the application of this 4th Amendment principle debatable, one cannot reasonably expect that the federal agents equipped only with knowledge gained from their agency training, should have reasonably known that the Isla Verde Airport was not the functional equivalent of a border. Even if such a conclusion had been clearly established at the time defendants acted, plaintiff's 4th Amendment right to be stopped only when agents entertain reasonable suspicion of his alienage could still be challenged under the fixed checkpoint rule. INS operations serving as fixed checkpoints away from the border are also exempt from the 4th Amendment restrictions of reasonable suspicion required for stops conducted by roving INS patrols away from the border. *Compare U.S. v. Martínez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) *with U.S. v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). In light of the difficulty evidenced in this case for even trained lawyers in applying 4th Amendment principles to federal immigration enforcement in Puerto Rico, it would be not only unfair, but unjust to require the federal agents in this case to unravel the intricacies of 4th Amendment issues not yet clearly resolved by the courts.

### b) *Plaintiff's Fifth Amendment Claims*

As evidenced from a liberal construction of the pleadings, plaintiff has alleged that defendants' conduct violated his Fifth Amendment rights to equal protection under the law, due process of law, and his fundamental right to travel. Defendants' motion for Summary Judgment raises these 5th Amendment issues only in the context of plaintiff's claims to constitutional violations in general. Plaintiff similarly fails to address his 5th Amendment conten-

tions in his opposition motion. Thus, this Court reaches the following conclusions primarily based on the parties' pleadings.

Plaintiff alleges in his complaint that defendants, by relying on "illegal and racist subjective criteria" to stop and question him, violated his right to equal protection under the law, implicitly guaranteed by either the Due Process Clause of the 5th Amendment or the Due Process and Equal Protection clauses of the 14th Amendment. (Paragraph 52, Complaint). Plaintiff has provided no factual support for this allegation. Furthermore, plaintiffs argument that defendants stopped him on the basis of impermissible criteria belies his strenuous argument advanced in plaintiff's own Opposition to defendant's Motion for Summary Judgment. There, plaintiff asserts that defendants, by attempting to stop *each and every passenger,* failed to exercise the discretion necessary to meet the standard of performance of a "discretionary function" required by the qualified immunity defense (Plaintiff's answer to Motion for Summary Judgment, at 7). Similar inconsistencies are found in plaintiff's argument that defendants violated the 4th Amendment by stopping passengers indiscriminately rather than only upon a reasonable suspicion. (Plaintiff's answer to Motion for Summary Judgment, at 11). Based on this lack of support in the record for plaintiff's contention, the Court can find no colorable 5th Amendment claim for violation of equal protection. Even if plaintiff has presented a colorable claim, defendants are shielded from liability in civil damages under the doctrine of qualified immunity. Defendants, as reasonable persons and in reference to relevant constitutional standards, could not be expected to know that such conduct would give rise to a citizen's claim for violation of equal protection.

Second, plaintiff alleges that his right to due process of law was violated through an unconstitutional deprivation of his liberty by defendants. Assuming the facts as pled by plaintiff in his complaint, this Court is unable to find a deprivation of plaintiff's liberty. Plaintiff claims that a security

guard blocked his way into the boarding area and that defendants physically impeded him from boarding the plane. Nevertheless, plaintiff asserts that, after verbal exchanges with the defendants and the security guard, he sought out an Eastern supervisor, an action which required leaving the area of the guard and defendants. Furthermore, after so doing, plaintiff permanently left the gate area and the airport. Thus, plaintiff was at no time forcibly detained from leaving the area of the stop; he was merely denied the right to move in the forward direction he desired. This Court can find no constitutional liberty interest triggered by defendants' denial of plaintiff's freedom of choice in this context. *Cf. Harris v. Macrae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) (freedom of choice in certain matters of marriage and family life implicates the "liberty" protected by the 5th and 14th Amendments). Even if plaintiff shows this Court in the near future that his claim to a deprivation of liberty is colorable, defendants are still entitled to protection under the defense of qualified immunity. No reasonable person could be expected to consider such conduct as the sort which may give rise to civil liability under clearly established principles of due process.

Plaintiff's final 5th Amendment claim is based on the allegation that defendants' actions violated his constitutional right to travel interstate. Again, plaintiff has failed to support his claim by reference to established constitutional jurisprudence. Assuming the facts most favorable to plaintiff, this Court can find no constitutionally impermissible prejudice occurring to plaintiff as a result of traveling between Puerto Rico and the Washington D.C. area. Even if plaintiff can prove to this Court that he has presented a colorable claim, defendants are still protected from civil liability under the objective reasonableness standard of conduct referred for qualified immunity. The law does not require defendants, as reasonable persons, to anticipate that their alleged conduct on October 2, 1982 would be subject to a suit for the violation of plaintiff's constitutional right to travel.

## C. CONCLUSION:

This Court concludes that plaintiff's *Bivens*-type claims against defendant Ivette Moreno are barred, having been brought more than one year after the cause of action occurred, as agreed by parties. Furthermore, plaintiff's *Bivens* claims against defendants Arán and Figueroa cannot succeed because both defendants are shielded from liability for civil damages as a result of qualified immunity.

As for plaintiff's claim for injunctive and declaratory relief under the 4th Amendment and the applicable statutory law and regulations, the Court concludes that the parties have not presented enough facts to determine the resolution of said issues on defendant's Motion for Summary Judgment. Having found no colorable support for plaintiff's claims under the 5th Amendment, the Court hereby grants plaintiff ten (10) days from the date of this Order to clarify and explain, to the satisfaction of the Court, how his 5th Amendment allegations represent colorable claims for injunctive and/or declaratory relief. If done, these claims will not be dismissed and will be heard along with the 4th Amendment issues at Trial of this action on November 29, 1984, at 9:30 a.m.

Accordingly, a Partial Summary Judgment is hereby GRANTED in favor of defendants Moreno, Arán and Figueroa in regard to plaintiff's claims against them in their individual capacity for civil damages.

The Clerk shall enter Judgment accordingly.

IT IS SO ORDERED.