**Millie PADRO, Francisco Padro, Milagros Issac, Plaintiffs,**

v.

**DEPARTMENT OF the NAVY, U.S. Navy Resale Activity, Capt. J.C. Kennedy, U.S.N., L.C.D.R. D.E. Rach, U.S.N., Manuel Menchaca, Defendants.**

**Civ. No. 89–0995CCC.**

United States District Court, D. Puerto Rico.

March 20, 1991.

· Juan Cruz–Cruz, Luquillo, P.R., for plaintiffs.

Daniel F. López–Romo, U.S. Atty., Miguel A. Fernández, Asst. U.S. Atty., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This action, brought by plaintiffs under the provisions of *Bivens v. Six Unknown Named Agents*,[1] is now before the Court on defendants' motion to dismiss (docket entry 8) and the corresponding opposition (docket entry 11). The basis for the action is main plaintiff Millie Padro's claim that her constitutional right not to be deprived from liberty and/or property without a due process of law was violated in the course of various incidents that took place while she was employed by the Naval Exchange (NEX) located at the Roosevelt Roads Naval Station, Puerto Rico. Plaintiff specifically alleges that she was: 1) verbally harassed and false imprisoned in order to force her to sign a statement, 2) dismissed from her employment on the basis of that statement and 3) later prohibited from entering the Naval Station. Defendants have moved for dismissal based on various legal theories, basically claiming that plaintiffs have failed to state a claim upon which relief can be granted, and that the Court lacks jurisdiction over both the subject matter and the person. Having carefully considered all the arguments presented, we now address the matter.

■ Mindful of the procedural stage in which this case is now before us, we briefly pause to recognize the generally accepted rule concerning motions to dismiss for failure to state a claim: that they should be viewed with disfavor and rarely granted. This should not be surprising, however, considering the applicable rule of law when deciding such a motion. As aptly summarized by Judge Selya:

> In the precincts patrolled by Rule 12(b)(6), the demands on the pleader are minimal. As we have recently stated, the Court must "accept the well pleaded factual averments of the latest ... complaint as true, and construe those facts in the light most flattering to the [plaintiffs'] case ... exempt[ing], of course, those 'facts' which have since been conclusively contradicted by [plaintiffs'] concessions or otherwise, and likewise eschew[ing] any reliance on bald assertions, insupportable conclusions, and 'opprobrious epithets.' " *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987) (citations omitted). A Rule 12(b)(6) motion will be granted only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff[s] to relief. *Conley v. Gibson*, 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957).

*Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

This is not to say, however, that the minimal pleading requirements imposed on plaintiffs by the Rules are to be overlooked, for they are "nonetheless required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory ... [I]f the facts narrated by the plaintiff[s] 'do not at least outline or adumbrate' a viable claim, [their] complaint cannot pass Rule 12(b)(6) muster." *Id.* at p. 515 (citations omitted).

---

1. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Having thus laid the groundwork for our inquiry, we turn to a detailed examination of the facts before us, as stated in the complaint, in order to determine whether they are sufficient to state a claim for relief under the applicable law. We begin by examining the first incident of an alleged constitutional violation suffered by plaintiff Ms. Padró: her illegal detention and false imprisonment. In this regard, the complaint stated:

2. On or about July 2, 1988, MS MILLIE PADRO, while performing her assigned duties at the Navy Exchange, Navy Resale Activity, Roosevelt Roads U.S. Naval Station, Puerto Rico, was summoned to the Exchange Security Office in the same building. Once in this Office, the Security Manager, MANUEL MENCHACA, after verbally harassing her for several minutes, handed her a handwritten note which he wanted MS. PADRO to pass on her own handwriting to another sheet of paper with the heading "Voluntary Statement".

3. That when MS. PADRO refused to do what MR. MENCHACA told her to do, she was locked by him in that office and informed that she would not be released until such time as she had written the statement handed to her. Depriving MS. PADRO of her liberty against her own will.

4. That fearing for her own safety, MS PADRO decided after a while, to write the statement as requested, even though she had no knowledge of most of the facts in the statements, and did not even know the meaning of many of the words included in it.

 Plaintiffs claim that the incident described above amounts to a deprivation of Ms. Padró's liberty interests without a due process of law, in violation of the Fifth[2] Amendment to the U.S. Constitution. However, it has been repeatedly held that not every interference with personal liberty serves to activate the protection of the Due Process Clause. "[I]t takes more than a false arrest or malicious prosecution claim to rise to the dignity of a constitutional violation, despite the loss of liberty that may be involved." *Sami v. United States,* 617 F.2d 755, 773 (D.C.Cir.1979). *See also Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Among the factors to be taken into consideration as minimal requirements for a restriction of liberty claim to amount to a constitutional violation are whether the restriction of liberty was the result of an egregious and pervasive conduct, *Sami v. United States, supra,* at 773, or of conduct that "shock[ed] the conscience" or was "otherwise offensive to the concept of ordered liberty." *Baker v. McCollan,* 443 U.S. at 147, 99 S.Ct. at 2696 (J. Blackmun, concurring). But a mere allegation that the restriction of liberty was committed by a governmental agent under color of official authority is not enough to transform what could certainly be considered a common law tort into a constitutional violation. *Harper v. McDonald,* 679 F.2d 955, 958 (D.C.Cir.1982). *See also Baker v. McCollan,* 443 U.S. at 147, 99 S.Ct. at 2696.

 In view of the above, and after liberally interpreting the pleadings in favor of plaintiffs, we consider that the complaint, although terse and unarticulated, has managed to adumbrate a restriction of liberty claim cognizable under the Constitution. Indeed, the complaint alleges that plaintiff Ms. Padró was deprived of her liberty for what she describes as "a while," after having been verbally harassed, and with the intention of coercing her to write an involuntary statement; during circumstances that we assume rendered the detaining officer without probable cause to effectuate the detention in the first place. *See Angola v. Civiletti,* 666 F.2d 1, 3 (2d Cir.1981) (stating that "every person enjoys some measure of protection against being

---

2. We have noted plaintiffs' repeated references in their brief to the Due Process Clause of the Fourteenth Amendment as the basis for their action. However, it is evident that the Fourteenth Amendment is inapplicable to the conduct of these defendants because of the Amendment's express requirement of state action. Accordingly, plaintiffs' allegations concerning their deprivation of liberty and property interests without a due process of law are better analyzed under the *Fifth* Amendment in the *Bivens* context.

coerced into cooperating with law enforcement authorities by governmental techniques of intimidation and harassment.") We think that this is enough to describe conduct bordering in a violation to the Constitution and, at least for the moment, we opt to give plaintiffs the full fanfare of a constitutional claim.

With regard to plaintiffs' second allegation of a constitutional violation, the complaint stated:

> 5. That the statement mentioned above, on MS PADRO's handwriting, was used by her employer, Navy Resale Activity, Roosevelt Roads Naval Station, Puerto Rico, as basis for her removal from employment by the end of July, 1988.
>
> 6. That MS MILLIE PADRO was by the Navy Resale Activity, Roosevelt Roads U.S. Naval Station, Puerto Rico, employed as an intermittent employee, and was kept in that same category for over a year even though during all the time she worked a regular schedule and not an intermittent one. A change to a category of regular employee should had been effected in accordance with SECRETARY OF THE NAVY INSTRUCTIONS 5300.22A Chapter II, which calls for an evaluation and change in category once an intermittent employee is required to work a regular schedule for a period of 90 calendar days or more.
>
> 7. That by keeping MILLIE PADRO as an intermittent employee, her employer, NAVY RESALE ACTIVITY, denied her the right to appeal her dismissal from employment, under Chapter V SECNAVINST 5300.22A. Thus, depriving her of her constitutional right to the due process of law.

Plaintiffs claim that these actions infringed both their liberty and property interests without a due process, in violation of their constitutional guarantees.

■ It has been generally recognized that the concept of liberty embodied in the Constitution recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). In order for an employee to make a successful liberty deprivation claim, he must then prove that he has suffered an impairment of one of the above recognized interests. In cases involving a termination, this requires the employee to show that his/her dismissal was based on false and defamatory charges, and that the same were made public by the employer. *Id.; See also Ortega–Rosario v. Alvarado–Ortiz*, 917 F.2d 71, 74 (1st Cir.1990), *Brennan v. Hendrigan*, 888 F.2d 189, 196 (1st Cir.1989).

■ Notwithstanding this rule of law, we note that plaintiffs have completely failed to assert in their complaint any facts which could possibly be interpreted as showing that Ms. Padró was indeed deprived of her liberty interests when dismissed from her employment. Their sole claim is that Ms. Padró was terminated from her employment on the basis of a statement, but the content of the same was never identified. Moreover, there is not even the minimal allegation that the dismissal was somehow based on false or defamatory information.[3] Even if we were to assume this, plaintiffs have similarly failed to allege that this information was ever made public.[4] Not surprisingly, then, there is no mention at all in the complaint of any specific facts tending to support that her discharge called into question her good name, reputation, honor or integrity, or

---

**3.** We note that plaintiffs' Opposition to the motion to dismiss contains additional facts which they insist show that the dismissal was based on defamatory information (*see* docket entry 11, p. 3). But, as plaintiffs' counsel surely knows, representations in a brief are not an adequate substitute for a record showing. *Goldstein v. Kelleher*, 728 F.2d 32, 37 (1st Cir.1984); *U.S. v. Kobrosky*, 711 F.2d 449, 457 (1st Cir.1983).

**4.** We do not assume this either, as both the Navy regulations and the Administrative Procedure Act protect personnel records from public disclosure. *See* 32 C.F.R. §§ 701.24(f) & (g) (1981); 5 U.S.C. § 552(b)(6) & (7).

that she experienced any disadvantage in obtaining other employment or was foreclosed from other employment opportunities. Only a conclusory allegation is made in this last respect (*see* complaint, ¶ 10). Under these circumstances, no protected liberty interests were infringed when Ms. Padró was terminated, and, therefore, the complaint fails to state a claim for relief on this matter.

■ It remains to be determined, however, whether Ms. Padró had a property interest in her employment entitling her to be afforded the constitutionally required due process before being dismissed. Whether an employee has such a property interest is a matter "defined by existing rules and understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents*, 408 U.S. at 577, 92 S.Ct. at 2709. Hence, in order to establish the existence of a property interest, the employee must demonstrate that he has a legally recognized expectation that he will retain his position. A mere subjective expectancy of continued employment is not sufficient. *Cheveras–Pacheco v. Rivera–González*, 809 F.2d 125, 127 (1st Cir.1987).

■ Defendants have argued that inasmuch as plaintiff Mrs. Padró was classified as an "intermittent" employee at the time of her dismissal, and that the regulations[5] describing the rights of such employees showed that she lacked any legitimate claim of entitlement to her position, plaintiffs have failed to show the existence of the required proprietary interest allowing them to seek relief under the Due Process Clause of the Constitution. Plaintiffs have rebutted this argument basically relying on the allegation previously raised in their complaint which asserted that, by being employed for more than a year as an "intermittent" employee, the applicable regulations mandated Ms. Padró's re-classification as a regular employee with its accompanying legitimate expectation to be terminated only for just cause.

Having examined the applicable regulations, and after accepting the allegations of the complaint as true and construing them in the light most favorable to plaintiffs, we agree with plaintiffs that they have managed to state a claim for relief under the Constitution for an apparent deprivation of their property interests without due process. Indeed, although it is true that "intermittent" employees seem to lack a proprietary interest in their jobs (*see* DOD 1401.1–M, February 1987, Chapter II, § A(3)(a) & (b)), as claimed by defendants, we similarly observe that the regulations do provide that those "intermittent" employees working a regular schedule for more than ninety (90) consecutive calendar days must be changed to a regular full-time or part-time category if there is a continuing need for their services. (*See* DOD 1401.1–M, February 1987, Chapter II, § A(3)(c)). Once those employees comply with the probationary status required by their new classifications (*see* DOD 1401.1–M, February 1987, Chapter II, § A(3)(c)(3)(b); Chapter II, § B(2)(f)), they obtain the full rights of these positions, including a legitimate expectation that they will be terminated only for cause (*see* DOD 1401.1–M, February 1987, Chapter V, § A(5) & (9)) and with it, a property interest in their jobs. Inasmuch as plaintiffs' complaint clearly states that Ms. Padró had been working as an intermittent employee with a regular schedule for more than a year, it appears that, if the above regulations had been followed, she would have acquired the status of a regular full-time or part-time employee with a property interest in her job by the time she was discharged

---

**5.** We note that both plaintiffs and defendants have made frequent references to the "Navy and Marine Corps Personnel Policy Manual for Nonappropriated Fund Instrumentalities," adopted on June 25, 1982, (SECNAVINST 5300.22A), as containing the regulations applicable to the facts now before us. However, by July 1988, when the events described in the complaint took place, this regulation had already been replaced by the revised "Department of Defense Personnel Policy Manual for Non-appropriated Fund Instrumentalities," which was adopted on February 27, 1987 (DOD 1401.1–M). Nonetheless, as the relevant sections remained substantially unchanged in the new regulation, the distinction is of no consequence.

on July 1988. As the complaint further suggests that her dismissal was accomplished without the required due process, we consider that on the basis of the record as it now stands, plaintiffs have stated a claim for relief under the Due Process Clause of the Constitution.

We turn now to an examination of plaintiffs' last claim of a constitutional violation: that Ms. Padró's disbarment from the base also infringed her constitutional right to due process. In this regard, the complaint stated:

8. That subsequent to her dismissal. MILLIE PADRO received a letter dated August 11, 1988, signed by J.C. KENNEDY, CAPTAIN, U.S.N., Commanding Officer, Roosevelt Roads U.S. Naval Station, Puerto Rico, in which she was notified that effective upon receipt of that letter, she was not to be found within the limits of the United States military reservation of Naval Station Roosevelt Roads, Puerto Rico, subject to apprehension and detention by the military, should she entered or be found upon the limits of the Naval Station.

9. That the above action forbidding MILLIE PADRO's entrance to the Naval Station, forced her to withdraw from the Naval Sea Cadets Corps and the Navy League at the Roosevelt Roads U.S. Naval Station. Puerto Rico, of which she was an active member.

■■■ Once again, we consider whether this action infringed any of Ms. Padró's liberty or property interests. Having examined the applicable law, we are convinced that it did not. As previously held, "[p]laintiff's interest to enter the Naval Station in Roosevelt Roads is not a property interest." *Medina v. United States*, 541 F.Supp. 719, 723 (D.P.R.1982), since under

the applicable regulations she lacks a "legitimate claim of entitlement" to continued admission to the base. *See* 32 C.F.R. § 700.702(a), 700.714, 700.715. *See also Serrano–Medina v. United States*, 709 F.2d 104, 108 (1st Cir.1983). Furthermore, no liberty interest seems to have been infringed, as the complaint once again has failed to state any facts showing that Ms. Padró's good name, reputation, honor and integrity, or possibilities for future employment were somehow impaired by this disbarment. The only allegation that could possibly be related to this issue is plaintiffs' averment that they were notified of the disbarment decision in a letter. However, its content is described only in general terms, and no claim is made that it contained any false or defamatory information. Neither is it alleged that the aforementioned letter was made public by defendants. Furthermore, there is also an absence of allegations tending to show that her disbarment was based on "patently arbitrary or discriminatory reasons." *See Cafeteria Workers v. McElroy*, 367 U.S. 886, 898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230, 1238 (1961). Hence, on the basis of these pleadings, we again fail to see how plaintiffs' property or liberty interests were infringed when Ms. Padró was summarily debarred from the base. Accordingly, this claim is hereby DISMISSED.

■■■ In sum, the complaint has only managed to articulate sufficient facts stating a claim for relief for the alleged restriction of liberty suffered by Ms. Padró and for the deprivation of her property interest in her job without the required procedural due process. However, defendants have pointed out with regard to the restriction of liberty claim that, since this incident took place on July 2, 1988 and the complaint was filed more than a year later,[6] on July 27,

---

6. Both parties seem to agree that the statute of limitations applicable in this action is the one-year time period established under local law for the filing of tort actions, against individuals. *See* Section 1868 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5298. In *Bivens* actions, as in suits under § 1983, the period of limitations comes from state law. Although the Court of Appeals for the First Circuit has not yet decided which Puerto Rico statute of limitations applies to *Bivens* claims, it has repeatedly held that the

one-year period mentioned above is applicable to § 1983 actions. *See Ramírez de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 318 (1st Cir.1978), *Altair Corp. v. Pesquera de Busquets,* 769 F.2d 30, 31 (1st Cir.1985), *Ayala Serrano v. Lebrón González,* 909 F.2d 8, 12 (1st Cir.1990). Because of the similarity of *Bivens* and § 1983 actions, *see Chin v. Bowen,* 833 F.2d 21, 23–24 (2d Cir.1987), we concur with the parties that the same time period is also applicable in

1989, any claim concerning the same is time barred. Plaintiffs have refuted this assertion, however, claiming that insofar as the complaint was filed within a period of one year after Ms. Padró first learned of the damages caused by that incident, it is timely filed. We are not persuaded by this argument, however, as we note that this is a restriction of liberty claim in which, if it really occurred, minimal damages must have been apparent immediately after its occurrence. In fact, the allegations stated in the complaint clearly demonstrate that plaintiff Ms. Padró became aware of the injury and the person who caused it (*see Colón–Prieto v. Géigel,* 115 D.P.R. 232, 247 (1984)) since the moment the incident occurred. We are convinced that the cause of action for the restriction of liberty accrued on July 2, 1988 when the security guard, defendant Manuel Menchaca, first detained Ms. Padró and held her against her will. As more than a year elapsed before the filing of the complaint, this claim is time barred and is, therefore, DISMISSED.

 As to plaintiffs' remaining claim, we reach a similar conclusion based on different reasons. The Court takes notice of the fact that this claim was brought only against the Navy Exchange which, although a non-appropriated fund instrumentality of the United States, is "like other military exchanges, ... an ' "ar[m] of the government deemed by it essential for the performance of governmental functions ... and [which] partake[s] of whatever immunities it may have under the constitution and federal statutes." ' " *Army and Air Force*

*Exchange Service v. Sheehan,* 456 U.S. 728, 733–34, 102 S.Ct. 2118, 2121–2122, 72 L.Ed.2d 520 (1982), quoting *United States v. Mississippi Tax Comm'n.,* 421 U.S. 599, 606, 95 S.Ct. 1872, 1877, 44 L.Ed.2d 404 (1975). As this action against it would be one against the sovereign, it would be barred by principles of sovereign immunity, unless it fell within the scope of any express statutory waiver of governmental immunity. However, plaintiffs have made no effort to show any applicable waiver of immunity for damages on a constitutional tort theory under the Fifth Amendment. It must be stressed that the Constitution by itself does not waive the government's sovereign immunity in a suit for damages, and that such suits based on the Constitution are not contemplated by *Bivens* and its progeny. *Garcia v. United States,* 666 F.2d 960, 966 (5th Cir.1982). Accordingly, under principles of sovereign immunity, the Navy Exchange is immune from suit in this action.[7]

In view of all what has been stated above, defendants' motion to dismiss the complaint is hereby GRANTED and the complaint is ORDERED DISMISSED as time barred and for lack of subject matter jurisdiction.[8]

SO ORDERED.

---

claims brought under the former. *Accord López v. Aran,* 600 F.Supp. 323, 326–27 (D.P.R.1984).

**7.** Even if we were to interpret that the Tucker Act, 28 U.S.C. § 1346(a)(2) provides the required waiver of sovereign immunity for the action against the Navy Exchange, *see Army and Air Force Exchange Service v. Sheehan,* 456 U.S. at 734, 102 S.Ct. at 2122, we would remain without jurisdiction. Pursuant to that statute, the district courts have jurisdiction over "[a]ny ... civil action or claim against the United States, *not exceeding $10,000 in amount,* founded ... upon the Constitution...." (Emphasis ours.) Conversely, any such action for a claim exceeding $10,000 is subject to the exclusive jurisdiction of the Claims Court. *See* 28 U.S.C.

§ 1491(a). In this case, the claim for damages amounted to $350,000.00 (*see* complaint, ¶ 11).

**8.** In view of the decision that we have just reached, we express no opinion as to whether the recent developments in the state of the law concerning *Bivens* actions would have precluded plaintiffs from bringing their suit under its provisions. *See Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (holding that the *Bivens* remedy is not available to a government employee suing a government agent for alleged constitutional violations associated with his employment). *See also Dynes v. Army Air Force Exchange Service,* 720 F.2d 1495 (11th Cir.1983); *Castella v. Long,* 701 F.Supp. 578, 582–84 (N.D.Tex.1988). In any event, this is

food for thought only as the parties have failed to address the matter in their briefs.