**Nelson AFANADOR, Maria Afanador and their Conjugal Partnership, Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Anthony Frank, Postmaster General, D.H. Tanner, in his official capacity and personally, and the United States of America, Defendants.**

**Civ. No. 89–0312 (JP).**

United States District Court, D. Puerto Rico.

Dec. 30, 1991.

262

William Santiago Sastre, Santurce, P.R., for plaintiffs.

Fidel A. Sevillano del Rio, Asst. U.S. Atty., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it Defendants' Motion to Dismiss and/or for Summary Judgment on the two causes of action remaining in this case. For the reasons stated below, defendants' motion is hereby GRANTED.

### I. Factual Background

The essential facts underlying this action are not in dispute. Plaintiff Nelson Afanador is at present, and was at all times pertinent to this case, a Window and Distribution Clerk with the United States Postal Service (hereinafter "Postal Service") in San Juan, Puerto Rico. The defendants are the Postal Service Postmaster General Anthony Frank, and D.H. Tanner, a postal inspector empowered by law to execute searches, seize evidence, and make arrests based on violations of federal law.

On October 5, 1986, Afanador was interrogated at the Postal Inspection Service Office in San Juan by postal inspectors Tanner and D.J. Pinto. After the interrogation, he was informed that he was the target of an investigation growing out of a complaint filed by a client of the Postal Service. On December 8, 1986, Afanador again met with Tanner. Afanador alleges that during this meeting the two agreed that if a criminal case was pursued by the Postal Service against Afanador, he would be notified in order to allow him to surrender voluntarily, thereby avoiding a public arrest at his workplace in the presence of his co-workers.

Afanador was later informed through his superior, Mr. Pedro Casas, that he could no longer work at the post office customer window or participate in any transactions involving money since he was the subject of an ongoing investigation. Afanador alleges that at this point he became the subject of rumors circulating among his co-workers. His wife, who is also a Postal Service employee and a plaintiff in this action, claims that because of her husband's situation, she suffered humiliation and mental distress.

On January 23, 1987, Tanner served Afanador with a Grand Jury subpoena at his workplace. On April 30, 1987, Tanner was informed that the Grand Jury had not returned an indictment against Afanador; however, Tanner did not inform Afanador, nor anyone else, of the results of the Grand Jury investigation. On May 20, 1987, Afanador was suspended from work for fourteen days based on the facts underlying the investigation. Upon his return, Afanador's duties were limited to clerical tasks.

On July 23, 1987, Tanner, based on an information charge filed in federal court, arrested Afanador at his workplace, thereby violating the alleged agreement they had made regarding his voluntary surrender. A Federal Magistrate released Afanador on his own recognizance; however, upon returning to work Afanador was notified that he was once again suspended. On August 24, 1987, at a status conference with the District Court Judge presiding over the case, the criminal charges were dismissed due to the government's failure to prosecute.

After exhausting the available administrative remedies,[1] Afanador brought the in-

---

1. Plaintiff filed a claim under the Federal Tort Claims Act, 28 U.S.C. § 2675, on April 21, 1988, which was denied by the Postal Service on September 13, 1988.

stant civil suit alleging that the defendants are liable to him for malicious prosecution and abuse of process, and under the authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. Afanador originally sought compensation in the amount of $500,000.00 for lost income, $150,000.00 for mental anguish, $20,000.00 for expenses, $200,000.00 for damages to his reputation and $250,000.00 for his wife. He later added claims, under his Title VII cause of action, for an additional $20,000.00 in expenses as well as attorneys' fees and costs.

On February 28, 1990, this Court, in response to Defendants' Motion to dismiss dated January 16, 1990, dismissed plaintiff's first (malicious prosecution) and second (abuse of process) causes of action, noting that both were based on the Federal Tort Claims Act, (hereinafter "F.T.C.A."), that the proper party to an F.T.C.A. action is the United States of America, not individual agencies or officers, and that the United States had not received proper notice of the action within the required time. *See* Pretrial Conference Order, Civ. No. 89–0312 (February 28, 1990). The Court thereafter instructed the parties that if a settlement was not reached, the defendants should file legal memoranda discussing (i) the statute of limitations in *Bivens* actions, and (ii) the plaintiff's Title VII retaliation action. In compliance with that instruction, and after plaintiff declined a settlement offer, defendants submitted their Motion to Dismiss and/or for Summary Judgment, which was opposed in Plaintiff's Brief on the *Bivens* and Title VII Retaliation Actions.[2]

## II. The *Bivens* Claim

Plaintiff's primary remaining claim is against defendant Tanner alone, in his personal capacity, under the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which the Supreme Court held that violations of the Fourth Amendment's commands against unreasonable searches and seizures by a federal agent acting under color of federal authority give rise to a federal cause of action against the agent for damages consequent upon the agent's unconstitutional conduct. In the later case of *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Court held that the liability established in *Bivens* also extends to violations of the rights provided under the due process clause Fifth Amendment. Plaintiff's claims are therefore predicated on alleged violations of his Fourth and Fifth Amendment rights.[3]

■ Defendants' move to dismiss plaintiff's *Bivens* action, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure,[4] on the ground that it is time-barred. The issue of the appropriate statute of limitations in *Bivens* actions is not new to this Court, *see, e.g., López v. Aran*, 600 F.Supp. 323 (D.Puerto Rico 1984) (Pieras, J.), nor to other courts in this District, *see, e.g., Padró v. Department of Navy*, 759 F.Supp. 958 (D.Puerto Rico 1991) (Cerezo, J.), all of which have held that a one-year statute of limitations applies. This issue has not yet been decided by the Court of Appeals for the First Circuit, however, so the Court is willing to reconsider its position.

**2.** Defendants also filed, pursuant to an Order of the Court dated October 11, 1991, a "Reply to Plaintiff's Brief on Equitable Tolling of the *Bivens* Claim," dated October 29, 1991.

**3.** Plaintiff also alleges violations of his Fourteenth Amendment rights; however, given that defendant Tanner is a federal agent acting under color of federal law, the Fourteenth Amendment, which controls *state* conduct, is inapplicable.

**4.** It is not entirely clear which procedural devices defendants intend to have applied to each of their arguments. Since the challenge to the *Bivens* claim is based on the statute of limitations, and is therefore an issue of subject matter jurisdiction, the Court assumes defendants' motion on this issue is predicated on Rule 12(b)(1). The Court notes that since defendants' motion is viewed as submitted under Rule 12(b)(1), the Court's determination of the issue was made solely on the pleadings in this case. *Cf.* text accompanying footnote 12.

The reasoning, which is widely accepted by federal courts, that leads to the conclusion that a one-year limitations period applies in this case, proceeds as follows. *Bivens* actions, being creatures of federal common law, have no established statutory limitations period; however, in analogous situations involving suits against *state* officials based on similar conduct, adjudicated under 42 U.S.C. § 1983, it has long been settled that federal courts should apply the statute of limitations of the most closely analogous state cause of action. *Accord Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Rodriguez Narváez v. Nazario*, 895 F.2d 38, 41 (1st Cir.1990) (discussing three-step process dictated by 42 U.S.C. § 1988); *Ramirez Morales v. Rosa Viera*, 815 F.2d 2, 4 (1st Cir.1987); *Altair Corp. v. Pesquera de Busquets*, 769 F.2d 30, 31 (1st Cir.1985). The Supreme Court has held that in actions under Section 1983 federal courts are to borrow the state law limitations period for personal injury claims. *Accord Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Wilson v. Garcia*, 471 U.S. 261, 278–79, 105 S.Ct. 1938, 1948–49, 85 L.Ed.2d 254 (1985) (citations omitted) (since Section 1983 is appropriately characterized as "conferring a general remedy for injuries to personal rights," the most analogous state limitations period will generally be the one reserved for personal torts).[5] The First Circuit has repeatedly held that for claims arising in Puerto Rico "[i]n cases pursuant to the Civil Rights Act [including Section 1983] the analogous and relevant statute of limitations is that which

is applicable to tort actions pursuant to Title 31 LPRA Section 5298(2), which establishes a period of one year 'from the time the aggrieved person had knowledge thereof.'" *Graffals González v. García Santiago*, 550 F.2d 687 (1st Cir.1977); *see also Rodríguez Narváez*, 895 F.2d at 42; *Ramirez de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 318 (1st Cir.1978); *Altair Corp. v. Pesquera de Busquets*, 769 F.2d 30, 31 (1st Cir.1985); *Ayala Serrano v. Lebrón González*, 909 F.2d 8, 12 (1st Cir.1990).

The Supreme Court has further held that the body of state laws governing certain issues under Section 1983 should apply to *Bivens* suits as well. *See, e.g., Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (body of law governing official immunity under Section 1983 should apply to *Bivens* suits). The purpose of this rule is to avoid the incongruous treatment that might otherwise result, especially where federal and state officials are sued based on the same conduct. *Id.* at 501, 98 S.Ct. at 2908. The underlying rationale appears to be that since *Bivens* actions concern claims against federal official parallel to those against state officials under Section 1983, the actions should be treated in a parallel fashion. Circuits that have addressed the issue have therefore held that state statutes of limitations should be borrowed for suits under *Bivens* as they are is suits under Section 1983. *Accord Beard v. Robinson*, 563 F.2d 331 (7th Cir.1977); *Regan v. Sullivan*, 557 F.2d 300 (2d Cir.1977).[6]

---

**5.** *See also Rodríguez Narváez*, 895 F.2d at 42 n. 6:

In *Owens v. Okure*, [488] U.S. [235], 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the Supreme Court further clarified its *Wilson* decision by holding that in states that have one or more limitation periods for certain enumerated intentional torts and a residual statute for all other injuries to personal rights it is the latter provision that is of application to actions under Section 1983.

**6.** The Second Circuit adopted this approach in *Chin v. Bowen*, 833 F.2d 21 (1987). In the case, the central issue on appeal was which statute of limitations provision of the New York Civil Practice Law and Rules should be applicable to

*Bivens* actions brought in federal court in New York. The Court noted the parallels between the actions, stating:

both *Bivens* and section 1983 actions are designed to provide redress for constitutional violations. Though the two actions are not precisely parallel, there is a 'general trend in the appellate courts to incorporate § 1983 law into *Bivens* suits.' The same immunity standard applies to both actions. Courts of Appeals have held that section 1983 concepts of state action apply in determining whether action was taken 'under color of state law' for *Bivens* purposes, and that the preemptive effect of a habeas corpus remedy is the same in prisoners' section 1983 and *Bivens* suits.

*Id.* at 24 (citations omitted).

Therefore, applying the Puerto Rico limitations period invoked in Section 1983 actions to the instant *Bivens* action, the Court finds that the appropriate limitations period for this suit is one year. Since plaintiff filed his complaint in this case on March 10, 1989, he must therefore show either that the cause of action on which the complaint was based arose no more than one year prior to that date or that the limitations period was in some fashion tolled.

 Plaintiff asserts, and the Court concurs, that his cause of action accrued on August 24, 1987, the date that the charges in the criminal suit were dismissed, rather than July 23, 1987, the date on which plaintiff was arrested.[7] Since this date is more than seventeen months prior to the filing of plaintiff's complaint in this case, plaintiff must show that the limitations period was somehow tolled prior to August 24, 1988 for his claim to survive. Plaintiff argues that the period was in fact tolled by an extra-judicial claim. On May 25, 1988,

plaintiff mailed to defendant Frank, Attorney General Edwin Meese, Caribbean Postmaster Cristóbal Lliteras, and United States Attorney for Puerto Rico Daniel López Romo a letter which provided the recipients with notice that plaintiff intended to institute a civil action against the defendants unless his claim was disposed of at the administrative level. *See* 28 U.S.C. § 2675.[8] In this letter, plaintiff noted that his claims against the individual defendants were predicated on *Bivens*.[9] Plaintiff asserts that this letter gave the defendants notice of his administrative claim and thereby effectively tolled the statute of limitations.

 State tolling provisions govern actions brought under Section 1983 and the other reconstruction statutes. *Accord Johnson v. Railway Express*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Rodriguez Narváez*, 895 F.2d at 42 (in borrowing state limitations period in Section 1983 suit, "resort must be had not only to the limitations period for personal injury ac-

---

**7.** The issue of the accrual of plaintiff's cause of action is a matter of federal law. *Accord Rubin v. O'Koren*, 621 F.2d 114 (5th Cir.1980) (citing *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir.1979)); *Donaldson v. O'Connor*, 493 F.2d 507 (5th Cir. 1974), *remanded on other grounds*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). The general federal rule is that a limitations period commences to run when plaintiff knows or should know of the injury that underlies his claim. *See, e.g., United Klans of America v. McGovern*, 621 F.2d 152 (5th Cir.1980) (per curiam); *Leonhard v. United States*, 633 F.2d 599 (2d Cir. 1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

Plaintiff's contention that the accrual date is the date on which the criminal charges were dismissed is based on an Equal Employment Opportunity Commission decision related to the Title VII action in this case. In the decision, which grew out of plaintiff's appeal of the Commission's rejection of this Title VII complaint on limitations grounds, the EEOC office of Review and Appeals stated:

Until the nature of the charge against him went on record, appellant had not basis for contending that [his] arrest on July 23 had been motivated by retaliatory animus. Accordingly, we find that the dismissal of the charge on August 24, rather than the arrest on July 23 was the incident which caused appellant to believe that he had been discriminated against.

EEOC Office of Review and Appeals, Appeal No. 01881195 at 2–3 (June 19, 1988). The standard that the EEOC applies to determine accrual dates is parallel to that used in federal courts. *See, e.g., Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975) (time for filing charge does not commence until the facts that support charge are apparent or should be apparent to a person with a reasonably prudent regard for his rights). Indeed, the standards are sufficiently similar for this Court to deem August 27 as the date of accrual of plaintiff's *Bivens* action.

**8.** 28 U.S.C. § 2675(a) provides:

An action shall not be instituted upon a claim against the United States which has been presented to a federal agency, for money damages for injury or loss of property or personal injury or death cause by the negligent or wrongful act or omission of an employee of the government while acting in the scope of his authority, unless such federal agency has made final disposition of the claim.

**9.** The letter states, at pages 5–6: "Mr. Afanador will exert his claim judicially under 28 USC 2674 (Liability of the United States); 42 USC 2000e–16 (Employment by Federal Government); and against the individual officers involved under *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388 [91 S.Ct. 1999, 29 L.Ed.2d 619] (1971)."

tions in Puerto Rico but also to the tolling rules provided by the laws."); *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Graffals González v. García Santiago,* 550 F.2d 687 (1st Cir.1977) (per curiam). And since, as discussed above,[10] state limitations periods are applied to *Bivens* suits by analogy to Section 1983 actions, it is also appropriate to apply state tolling provisions to *Bivens* actions.

The tolling provisions prescribed by Puerto Rico law are found in Article 1873 of the Civil Code, 31 L.P.R.A. § 5303, which states:

> Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor.

In *Rodriguez Narváez,* the First Circuit, after noting that under Puerto Rico law "tolling provisions must be interpreted restrictively against the person invoking their protection," (895 F.2d at 43), explained that in order to show a toll resulting from an extrajudicial claim, a plaintiff must show that

> the claim [was] made by the holder of the substantive right (or his legal representative), it [was] addressed to the debtor or passive subject of the right, not to a third party, and it [required] or demand[ed] the same conduct or relief sought in the subsequent lawsuit.

*Id.* at 44 (citations omitted).

■ Plaintiff fails to make the required showing regarding at least one of these requirements. The letter sent by Afanador was not "addressed to" Tanner,

nor was a copy even sent to Tanner. *See Gual Morales v. Hernández Vega,* 604 F.2d 730, 732 (1st Cir.1979) (under Puerto Rican law, "in order to have the tolling effect the extrajudicial claim must be expressly and precisely made to the debtor against whom the suit is instituted"). Plaintiff argues, however, that this deficiency is not fatal because the notice that was given, which was sufficient to toll claims against those to whom the letter was addressed, by law tolls claims against anyone with whom the addressees were jointly and severally liable. While legally supportable (*accord* 31 L.P.R.A. § 5304; *Rivera Otero v. Casco Sales Co.,* 115 D.P.R. 662, 667 (1984)), plaintiff's contention is factually flawed. The government defendants to whom notice was given are *not* jointly and severally liable with Tanner on the *Bivens* claim, which is directed solely against Tanner in his individual capacity.

Plaintiff therefore fails to show that the one-year statute of limitations on his *Bivens* action was tolled and the action is therefore DISMISSED due to its untimeliness.

### III. The Title VII Claim

■ Plaintiff's other remaining cause of action is predicated on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. Specifically, plaintiff charges that the actions of various government agents, including Inspector Tanner, constituted unlawful retaliation against him in response to his filing of an administrative claim.[11] Plaintiff charges that the defendants are liable to him under Title VII for $20,000.00 in expenses and for attorneys fees and costs.

---

**10.** *See, supra,* text at pages 264–266.

**11.** To demonstrate a *prima facie* claim of retaliation under 42 U.S.C. § 2000e–3(a), a plaintiff

must show by a preponderance of the reliable evidence that (1) she engaged in a protected activity as an employee, (2) she was subsequently discharged from employment, and (3) there was a causal connection between the protected activity and the discharge.

*Hochstadt v. Worcester Foundation for Experimental Biology, Inc.,* 425 F.Supp. 318, 324 (D. Mass.), *aff'd,* 545 F.2d 222 (1st Cir.1976), *cited*

in, 909 F.2d at 33; *see also Morgan v. Massachusetts General Hospital,* 901 F.2d 186, 193 (1st Cir.1990). The federal government and its agencies are liable for retaliation, even though the statutory language extending Title VII coverage to federal employees, *accord* 42 U.S.C. § 2000e–16, does not specifically create a cause of action for retaliation. *See Hale v. Marsh,* 808 F.2d 616 (7th Cir.1986); *Avon v. Sampson,* 547 F.2d 446, 449–50 (9th Cir.1976).

Because the Court dismisses plaintiff's Title VII action based on its mootness, the contours of plaintiff's *prima facie* case, and defendants' responses thereto, are not herein discussed.

The Court notes at the outset that it faced some difficulty deciding how to view defendants' motion regarding plaintiff's Title VII action.[12] As already noted, defendants' have titled their submission a motion to dismiss and/or for summary judgment; however, it appears that it was not properly submitted as either. Local Rule 311.12 directs that a motion for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Defendants' motion was no so accompanied, however, and therefore was not properly submitted as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Since defendants' motion consists of a two-pronged attack alleging that plaintiff's complaint fails to state a claim upon which relief can be granted, the Court therefore views defendants' motion as a motion to dismiss submitted pursuant to Rule 12(b)(6). However, as both defendants' motion and plaintiff's response were submitted along with documents outside of the pleadings for the Court's consideration, the Court, pursuant to Rule 12(b), treats defendants' motion as a motion for summary judgment.[13] Rule 56(c) provides for the entry of summary judgment in a case where the pleadings and certain other submitted materials show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988); *see also* C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 1366 at p. 506 (footnote omitted) ("Once [a Rule 12(b)(6)] proceeding [is converted and] becomes one for summary judgment, the moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.") Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987); *Peckham v. Ronrico Corp.*, 171 F.2d 653 (1st Cir.1948).[14] Essentially, Rule 56(c) mandates that summary judgment be entered against a party who fails to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Defendants' first ground for summary judgment on plaintiff's Title VII action is based on an allegation that plaintiff's claim is moot.[15] Defendants charge

---

**12.** *See, supra,* footnote 4.

**13.** Rule 12(b) provides, in pertinent part:
... If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provide in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.
*See also* 5A C. Wright & A. Miller, *Federal Practice and Procedure* Civil § 1366 at p. 485 ("Although the conversion provision in Rule 12(b) expressly applies only to the defense described in Rule 12(b)(6), it is not necessary that the moving party actually label his motion as one under that provision in order for it to be converted into a motion for summary judgment.")

**14.** A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack, supra,* at 181.

**15.** The constitutional cases and controversies limitation, U.S. Const. Art. III, sec. 2, prevents federal courts from deciding moot questions. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), *reh'g denied,* 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937). An actual controversy between the parties must exist at the time the action is brought and at the time it is reviewed. It is axiomatic that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). As a result, if defendant can successful-

that plaintiff has already received all compensation available to him under the statute for the harms he suffered. Under Title VII,

> If the court finds that the [defendant] has intentionally engaged in or is intentionally engaging in an unlawful employment practice ... the court may enjoin the [defendant] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g).[16]

A district court has considerable discretion in framing a remedial decree under Title VII. In the area of monetary awards, it may provide retroactive relief so that plaintiffs are made whole "for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Such retroactive relief may take the form of back pay and retroactive reinstatement or promotion. *Id.* at 422, 95 S.Ct. at 2373-74; *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *see also Zipes v. Trans World Airlines,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (retroactive seniority may also be an appropriate remedy). It may also award prospective relief such as "front pay," which reimburses an employee where he or she will remain unable to receive a job or promotion until a position becomes available or where reinstatement is determined to be inappropriate because of a hostile environment. *See, e.g., Thompson v. Sawyer,* 678 F.2d 257 (D.C.Cir.1982); *Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945, 957 (10th Cir.1980). Finally, it may award prejudgment interest, although usually not in a suit against the federal government. *Ac-*

*cord Library of Congress v. Shaw,* 478 U.S. 310, 321-22, 106 S.Ct. 2957, 2965-66, 92 L.Ed.2d 250 (1986). In the area of purely equitable relief, the court may direct a defendant to give preferences to the plaintiff in hiring and promotion or set quotas and goals where it is shown that discriminatory conduct will recur. *Accord County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

Almost every circuit court that has confronted the issue, however, has held that neither punitive nor compensatory damages are available under Title VII. *Accord Walker v. Ford Motor Co.,* 684 F.2d 1355, 1363-64 (11th Cir.1982) (citing cases from Third, Fourth, Sixth, Ninth and Tenth Circuits). *But see Williams v. Trans World Airlines,* 660 F.2d 1267 (8th Cir.1981). In this case, defendants have stated, and plaintiff has not disputed, that plaintiff is not entitled to, and has not requested, any of the relief traditionally available under Title VII. He cannot be owed back pay because he was already made whole for all of the pay he lost—during his 14-day suspension—through grievance arbitration proceedings. Furthermore, he does allege any ongoing unlawful employment practice which may be enjoined. The "expenses" Afanador requests can only be characterized as falling within the category of compensatory damages, which, as discussed above, are unavailable.

Nevertheless, plaintiff may be entitled to *nominal* damages in this case, upon which a right to attorney's fees may attach. Some courts, despite the equitable nature of Title VII remedies and the widely held view that damages are not available in Title VII actions, have awarded nominal damages to successful plaintiffs for whom no other remedy is available, or at least suggested that the remedy may be appropriate. As discussed further below, it is by no means clear whether nominal damages

---

ly show that plaintiff is not entitled to any form of relief even if he proves all of the factual allegations in his complaint, the Court is precluded from considering the merits of this case.

**16.** 42 U.S.C. § 2000e-5(g) is specifically incorporated into the provisions at 42 U.S.C. § 2000e-16(c) relating to federal sector offenses.

are in fact available in Title VII action. As the Court wades into the mire that has developed around this issue, several items should be noted. First, the Court considers this issue without the assistance of the parties in this case, since they have not briefed this issue at any stage of this litigation. Second, the fact that plaintiff's have not explicitly requested nominal damages in their complaint does not disqualify this Court from considering this issue.[17]

The long and now confused history of this issue can be summarized as follows. In 1981,[18] the Fifth Circuit, in its opinion in *Joshi v. Florida State University*, 646 F.2d 981 (5th Cir.), *reh'g denied*, 654 F.2d 723 (5th Cir.), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2233, 72 L.Ed.2d 845 (1981), *appeal after remand*, 763 F.2d 1227 (11th Cir.), *reh'g denied en banc*, 770 F.2d 1084 (11th Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 293 (1985), *on remand*, 48 BNA FEP Cases 656 (N.D.Fla. 1986), *aff'd without op.*, 845 F.2d 1030 (11th Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989), remanded an employment discrimination case brought under Title VII by an Native American female physician finding that a portion of defendant's evidence intended to show that termination of the plaintiff was the result of nondiscriminatory reasons was insufficient. At the conclusion of its opinion, the court added the following direction to the trial court in a footnote:

If on remand the district court determines that [plaintiff's] gender was a factor in the defendant's failure to consider her application but that she would not have been hired in any event because those chosen were thought to be, for any nondiscriminatory reason, better suited for the position, [plaintiff] would not be entitled to back pay; *however, the trial court should consider whether she might be entitled to other relief, if only nominal damages, which would carry with it attorneys fees. See Gillin v. Federal Paper Board Co., Inc.*, 479 F.2d 97 (2d Cir.1973); *Saracini v. Missouri Pacific Railroad Co.*, 431 F.Supp. 389 (E.D.Ark.W.D.1977).

*Joshi*, 646 F.2d at 991 n. 33 (emphasis added). The above-quoted language can in no way be construed as holding that nominal damages *are* available in Title VII actions. The two cases cited by the court do not nearly constitute persuasive authority supporting this proposition. The Second Circuit's opinion in *Gillin* failed even to mention nominal damages. It merely remanded to the lower court to consider whether plaintiff was entitled to *any* damages and cited to a Sixth Circuit opinion, *King v. Laborers Local 818*, 443 F.2d 273 (6th Cir.1971), which held that Title VII plaintiffs may be entitled to "damages of lost compensation" (*id.* at 278–79) even though such lost compensation awards are viewed as equitable under Title VII. The

---

**17.** Under Rule 12(b)(6), a complaint should not be dismissed where, despite the plaintiff's inability to obtain the relief requested, the court can ascertain that some form of relief may be granted. 5A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1357, p. 339 (1990); *see also Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59) (complaint should not be dismissed unless " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' ")

**18.** Several district court opinions appeared prior to 1981 in which courts either discussed the possibility or actually awarded nominal damages in a Title VII context. *Accord Compston v. Borden, Inc.*, 424 F.Supp. 157, 162 (S.D. Ohio E.D.1976) (citing *Wilson v. Eberle*, 18 F.R.D. 7,

9, 15 (D. Alaska 1955) ("... [W]here as here a Title VII plaintiff has proved the essential elements of his claim but back pay and injunctive relief are unavailable to him because of the factual posture in which the case reaches trial, an award of nominal damages, plus where appropriate an award of costs and attorneys fees, should be entered."); *Croker v. Boeing Co.*, 26 Epl.Prac.Dec. (CCH) ¶ 31,867 at 20,867, 1979 WL 116 (E.D.Pa.1979) ("Because the proscription in Title VII against racial harassment is clear, courts should in some manner recognize a proven violation of the Act. This Court follows the helpful analysis set forth in *Compston v. Borden, supra*, and will award nominal damages of $50 for any proven instances of racial harassment which did not cause any compensable economic harm.") Since these cases contain almost no discussion of the propriety or legality of such awards, they are not helpful in understanding the development of this issue.

Arkansas district court opinion in *Saracini* also fails to mention nominal damages and appears to have been cited for the proposition that a non-prevailing Title VII plaintiff may be entitled to an award of attorney's fees "for bringing to light discriminatory practices of [a] defendant" (*Saracini,* 431 F.Supp. at 398)—a proposition is wholly inconsistent with settled case law on the subject. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

In the period immediately following *Joshi,* several circuits cited to it for the proposition that nominal damages might be available to Title VII plaintiffs.[19] One such court was the First Circuit, which considered this issue for the first and only time in *T & S Service Associates, Inc. v. Crenson,* 666 F.2d 722 (1st Cir.1981). In its opinion, the court, in remanding the case, cited both *Joshi* and *Gillin* and directed the lower court to "consider whether nominal damages, along with attorneys' fees might be appropriate relief in a Title VII suit." *Id.,* 666 F.2d at 728 n. 8 (citation omitted). For the reasons discussed above in regard to the almost identical language in the *Joshi* opinion, this statement by the First Circuit can in no way be considered to reflect any opinion as to whether nominal damages are or are not available in Title VII actions.

In 1982, however, in *Dean v. Civiletti,* 670 F.2d 99 (8th Cir.1982) (per curiam), the Eighth Circuit added considerable fuel to the spark started in *Joshi* by awarding nominal damages to a Title VII plaintiff. In the case, the trial court had concluded that although the plaintiff had been discriminated against she was entitled to no relief because defendants' actions did not cause her any loss of income or benefits. The circuit court agreed that the plaintiff had failed to show any loss but disagreed with the trial court's conclusion regarding damages, stating:

... [W]e disagree with the district court's conclusion that [plaintiff] is entitled to no relief. We find that having prevailed on the discrimination issue ... she is entitled to recover nominal damages of at least $1 as well as attorney's fees for proceedings in the district court. *Id.* at 101 (footnote omitted). The opinion, however, contains no mention, much less a discussion, of the basis on which the court decided to award nominal damages. As a result, although more affirmative than *Joshi* on the availability of nominal damages in Title VII actions, it is no more persuasive.

Nevertheless, from its inauspicious beginnings, the proposition that nominal damages are available in Title VII actions began to grow. For example, in *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir. 1982), the Eleventh Circuit, without considering the issue in any detail but citing to *Joshi* and *Dean,* stated that a prevailing Title VII plaintiff, "may ... recover nominal damages ... and thereby become eligible for an award of attorneys fees." *Henson,* 682 F.2d at 905–06 (footnote omitted).

It was not until 1986, however, that a circuit court squarely addressed the issue of the availability of nominal damages in Title VII cases. In *Bohen v. City of East Chicago,* 799 F.2d 1180 (7th Cir.1986), the Seventh Circuit was faced with an Title VII appellant who expressly contended that a district court had erred in denying her nominal damages. The court first reviewed those cases that had held that "[s]ince damages are not equitable relief ... [they] are not available to redress violations of Title VII that do not result in [economic harm to the plaintiff]." *Id.* at 1184 (citing *Muldrew v. Anheuser-Busch,* 728 F.2d 989, 992 n. 2 (8th Cir.1984); *Bundy v. Jackson,* 641 F.2d 934, 946 n. 12 (D.C.Cir.1981); *DeGrace v. Rumsfeld,* 614 F.2d 796 (1st Cir.1980)). Then, reviewing the decisions which had intimated that nominal damages are none-

19. *See, e.g., Katz v. Dole,* 709 F.2d 251, 253 n. 1 (4th Cir.1983):
 In the event [plaintiff] prevails on this appeal, and subsequently is reinstated ... the award of injunctive or declaratory relief could be appropriate. In addition, even if [plaintiff]

does not regain her job, [she] might be entitled to nominal damages and attorneys fees. *See Joshi v. Florida State University,* 646 F.2d 981, 991 n. 33 (5th Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2233, 72 L.Ed.2d 845 (1982).

theless available, the Court clearly and forcefully rejected such a conclusion, explaining:

> Several circuits have begun to suggest in *dicta* that nominal damages could be awarded in situations [where the plaintiff cannot obtain equitable relief] to create a remedy on which to tack an award of costs and attorney's fees. We believe the better view, in accord with the majority of decisions, is that no damages are available under Title VII. If Congress wishes to amend the provisions of Title VII to provide a remedy of damages, it can do so. Until then, this court may only enforce the statute as written, and as currently written Title VII does not contemplate damages.

*Bohen v. City of East Chicago*, 799 F.2d 1180, 1184 (7th Cir.1986) (citing *Katz, Henson, Joshi,* and *Crenson* ); *see also Swanson v. Elmhurst Chrysler Plymouth, Inc.*, 882 F.2d 1235 (7th Cir.1989) (reaffirming *Bohen* ).[20]

This trend away from awarding nominal damages in Title VII suits was strengthened very recently when the Eleventh Circuit, in *Walker v. Anderson Electrical Connectors*, 944 F.2d 841 (11th Cir.1991) although not addressing the issue squarely, denied such an award in a Title VII action.

The court was faced with a claim that the Supreme Court opinion in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), "requires the automatic award of nominal damages upon the finding of a Title VII violation...." *Walker*, 944 F.2d at 845. The court rejected this argument, stating:

> *Carey* involved interpretation of 42 U.S.C. § 1983, which provides a remedy for violations of constitutional rights by persons acting under color of state law. Emphasizing the absolute nature of constitutional rights and "the importance to organized society that those rights be scrupulously observed," *Carey*, 435 U.S. at 266, 98 S.Ct. at 1053, the Court mandated the award of nominal damages upon the finding of a procedural due process violation even where no actual injury had been shown. By contrast, this case involves, not a violation of constitutional rights, but merely, a violation of purely statutory rights under Title VII. Nothing in *Carey* mandates the award of nominal damages for statutory violations.

*Id.* at 845 (footnotes omitted).[21]

Therefore, given the weak support for the proposition that nominal damages are

---

**20.** *See also Bohen v. City of East Chicago*, 622 F.Supp. 1234, 1245–46 (D.C. Ind.1985) (citations omitted):

> Although I understand why some courts permit the award of nominal damages, I do not agree with their decisions. Nominal damages are not "equitable" relief within the meaning of Title VII. The statute does not mention them, and I could not award them without offering the defendants a jury trial. Too, "nominal" damages are not something a court awards just to keep a case alive. The traditional award of one dollar is the remedy in a case in which compensatory relief is available in principle, but plaintiff did not establish the amount of injury and so cannot obtain a substantial award. A judge who lacks the power to award substantial damages that have been proved ... may not use nominal damages as a heart balm.

**21.** Several other cases have been located that touch on the issue of the availability of nominal damages in Title VII actions; however, they are of little use in understanding the issues involved. They generally involve cases in which trial courts, as part of a relief package involving back pay, reinstatement, and other awards of

significant value, also granted plaintiffs nominal damages. The circuit court opinions, some of which upheld the lower court decision and some of which remanded, all failed to discuss the issue of nominal damages, presumably because such awards are themselves monetarily insignificant and, when granted along with other types of relief, their effect on the availability of attorney's fees is significantly diminished. *Accord Baker v. Warehaeuser Co.*, 903 F.2d 1342 (10th Cir.1990) (judgment awarding nominal damages on Title VII cause of action upheld where only substantive findings challenged); *Welborn v. Reynolds Metal Co.*, 868 F.2d 389 (11th Cir.1989) (pre–*Walker* case in which judgment awarding nominal damages as part of package remanded without discussion of availability of nominal relief); *Floca v. Homcare Health Services, Inc.*, 845 F.2d 108 (5th Cir.1988) (remanding judgment awarding only nominal damages for determination of whether back pay was appropriate, without discussion of availability of nominal relief); *Flowers v. Area Agency of Aging, Inc.*, 574 F.Supp. 71 (E.D. Ark.1983), *dism'd without op.*, 738 F.2d 444 (8th Cir.1984) (awarding nominal damages in Title VII context relying on such an award in *Pollack v. Baxter*

273 of the 14

available in Title VII cases provided by *Joshi, Dean,* and *Crenson,* and the strong and cogent denunciations of this proposition in *Bohen* and *Walker,* the Court is inclined to find that nominal damages are not available to Afanador and that defendants' claim that Afanador's Title VII cause of action is moot because he has received all the remedies he is entitled to is therefore correct. Before reaching this conclusion, however, two other decisions, which cast some doubt on the propriety of such a holding, must be examined.

First, earlier this year, a Rhode Island district court, reviewing almost exactly the same cases summarized above, concluded that nominal damages *are* available in Title VII actions. The court summarized the precedents as follows:

> Compensatory and punitive damages clearly are not available to Title VII plaintiffs. *Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 159 (1st Cir.1990). Nominal damages are considered to be an improper Title VII remedy by the Seventh Circuit. *Swanson v. Elmhurst Chrysler Plymouth, Inc.,* 882 F.2d 1235 (7th Cir.1989), *cert. denied,* [493] U.S. [1036], 110 S.Ct. 758, 107 L.Ed.2d 774 (1990). However, several other circuit courts, including the First Circuit, have suggested that nominal damages can be awarded under Title VII. *T & S Serv. Assocs., Inc. v. Crenson,* 666 F.2d 722, 728 n. 8 (1st Cir.1981). *See, e.g., Katz v. Dole,* 709 F.2d 251, 253 n. 1 (4th Cir.1983); *Henson [v. City of Dundee],* 682 F.2d [897] 905–06 & n. 12; [11th Cir.1982]; *Joshi v. Florida State Univ.,* 646 F.2d 981, 991 n. 33 (5th Cir. Unit B 1981).

*Showalter v. Allison Reed Group, Inc.,* 767 F.Supp. 1205, 1213 (D.R.I.1991). The court then proceeded, without any further discussion of the issue, to conclude that one of the plaintiffs in the case was entitled to $1 in nominal damages. *Id.* at 1214. Although concerned about this result, the Court does not feel that the *Showalter* opinion adds weight to the proposition that nominal damages are available in Title VII

cases. As the foregoing discussion of the relevant precedents in this case reflects, the cases that the *Showalter* court appears to have relied upon do not support its conclusion.

The Court finds cause for greater concern, however, arising from the Supreme Court opinion in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In the case, which involved a charge of gender discrimination under Title VII, the Court was confronted with a petitioner's assertion that Title VII does not provide for awards absent economic loss by the complainant. The Court explained the defendant's view, which it then rejected, as follows:

> [Petitioner] contends ... that in prohibiting discrimination with respect to "compensation, terms, conditions, or privileges" of employment, Congress was concerned with what petitioner describes as "tangible loss" of "an economic character," not "purely psychological aspects of the workplace environment." In support of this claim petitioner observes that in both the legislative history of Title VII and this Court's Title VII decisions, the focus has been on tangible, economic barriers erected by discrimination.
>
> We reject petitioner's view. First, the language of Title VII is not limited to "economic" or "tangible" discrimination. The phrase "terms, conditions, or privileges of employment" evinces a congressional intent " 'to strike at the entire spectrum of disparate treatment of men and women' " in employment. Petitioner has pointed to nothing in the Act to suggest that Congress contemplated the limitation urged here.

*Meritor,* 477 U.S. at 64, 106 S.Ct. at 2404 (citations omitted). Later, the Court stated in even clearer terms that the district court had been "erroneous" in its view "that a claim for sexual harassment will not lie absent an *economic* effect on the complainant's employment." *Id.* at 67–68, 106 S.Ct. at 2406 (emphasis in original).

At first glance, the opinion in *Meritor* would appear to cast considerable doubt on

*Manor Nursing Home,* 716 F.2d 545 (8th Cir. 1983), a non-Title VII case).

the continuing validity of those cases holding that awards—such as those of nominal damages—intended to compensate for non-economic harms suffered by complainants are unavailable in Title VII actions. Some evidence can be found suggesting that the *Meritor* opinion, at least in the area of gender discrimination cases adjudicated under Title VII, has caused an "erosion" of the prior caselaw on this issue. *Beesley v. Hartford Fire Ins. Co.*, 723 F.Supp. 635, 650 (N.D.Ala.1989) (emphasis added) ("It is abundantly clear from *Meritor* ... that the victim of "simple" sexual harassment is due *more than nominal damages* even though no measurable economic harm results.")

Upon further review, however, it becomes clear that the effect of *Meritor* does not extend beyond the field of certain gender discrimination cases. The *Meritor* Court reached its conclusion based on several unique aspects of Title VII claims based on gender discrimination. First, the Court reviewed the legislative history behind Title VII's prohibition of discrimination based on sex and concluded that while the history is sparse, it suggests an inclination on the part of Congress to afford separate treatment to employment discrimination based on sex. More significantly, the Court discussed the case of *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981), and the Equal Employment Opportunity Commission's Guidelines on Discrimination Because of Sex, 29 C.F.R. § 1604.11(a), which discuss the harms caused by sexual harassment that, "while not affecting economic benefits, creates a hostile or offensive working environment." *Meritor*, 477 U.S. at 62, 106 S.Ct. at 2403. The Court then went on to discuss in great detail the problems associated with what it called "hostile environment" sexual harassment and carved out what appears to be an exception to some of Title VII's limitations in an effort to counteract such conduct in the workplace. As a result, the language quoted above in which the Court stated that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment" (*id.* at 64, 106 S.Ct. at 2404 (citations omitted), should be read narrowly to suggest only the court's view of the availability of certain types of damages in "hostile environment" sexual harassment cases under Title VII. Caselaw concerning other types of actions under Title VII, including actions based on alleged retaliatory acts by employers, remains unaffected by *Meritor*.

In conclusion, despite the considerable confusion surrounding this issue, the Court finds that nominal damages are not available to the plaintiff in this case. And since plaintiff is also not entitled to the compensatory damages he seeks in his complaint, plaintiff is not entitled to any sort of monetary award. Finally, a Title VII plaintiff who receives no sort of remedy is not a prevailing party and is therefore not entitled to an award of attorney's fees. *Accord* 42 U.S.C. § 1988; *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation omitted) (plaintiff may be considered a "prevailing" party for purposes of attorney's fees award only if he succeeds on " 'any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' ") As a result, plaintiff lacks a legally cognizable interest in the outcome of this case and his claim is therefore moot. *See E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1519 (9th Cir.1989) (citing *E.E.O.C. v. Goodyear Aerospace*, 813 F.2d 1539, 1542 (9th Cir.1987)). Based on the foregoing, plaintiff's Title VII cause of action is hereby DISMISSED.

IT IS SO ORDERED.